**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:26-cv-3690**

GREG HOWETH;
ZACKARY DOUGHERTY; and
NATIONAL RIFLE ASSOCIATION OF AMERICA,

*Plaintiffs*,

v.

CITY AND COUNTY OF DENVER, COLORADO;
AL GARDNER, in his official capacity as Executive Director of Public Safety for
the City and County of Denver;
RON THOMAS, in his official capacity as Chief of Police for the City and
County of Denver;
MIKO BROWN, in her official capacity as City Attorney for the City and County
of Denver;
ELIAS DIGGINS, in his official capacity as Sheriff of Denver;
PHIL WEISER, in his official capacity as Colorado Attorney General; and
STAN HILKEY, in his official capacity as Executive Director of the Colorado
Department of Public Safety,

*Defendants*.

**VERIFIED COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

COME NOW the Plaintiffs, Greg Howeth, Zackary Dougherty, and National

Rifle Association of America ("NRA"), by and through their undersigned counsel,

and complain of the Defendants as follows:

1

## I.    INTRODUCTION

1.    This case challenges the combined operation of Colorado's concealed-handgun-permit laws and Denver's open-carry ban, which together leave otherwise qualified nonresidents who travel to Denver with no lawful means to carry a handgun there for self-defense;

2.    Plaintiffs challenge Colo. Rev. Stat. §§ 18-12-203 and 18-12-213, and Denver Revised Municipal Code § 38-117(a), (b), and (f), facially and as applied to Plaintiffs and similarly situated NRA members who are nonresidents of Colorado, otherwise qualified to carry handguns, and unable to lawfully carry in Denver because of the combined effect of those laws;

## II.    PARTIES

3.    Plaintiff Gregory Howeth is an adult resident of Maui County, Hawaii, a citizen of the United States, and a member of the NRA. Mr. Howeth regularly travels to Colorado, including Denver, and would carry a handgun for lawful self-defense in Denver but for the challenged laws.

4.    Plaintiff Zackary Dougherty is an adult resident of Greenville County, South Carolina, a citizen of the United States, and a member of the NRA. Mr. Dougherty regularly travels to Colorado, including Denver, and would carry a handgun for lawful self-defense in Denver but for the challenged laws.

2

5.      Plaintiff NRA is a nonprofit membership organization devoted to protecting the right to keep and bear arms. Founded in 1871, the NRA is America's oldest civil rights organization, and America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. The NRA has millions of members across the Nation, including members—such as Plaintiffs Howeth and Dougherty—who are nonresidents of Colorado and intend to carry firearms for self-defense in Denver but for Colo. Rev. Stat. §§ 18-12-203 and 18-12-213, and Denver Revised Municipal Code § 38-117(a), (b), and (f). The NRA brings this action on behalf of its members who are subject to a credible threat of enforcement under these laws and who are therefore deterred from lawfully carrying firearms for self-defense in Denver, including Plaintiffs Howeth and Dougherty.

6.      Defendant City and County of Denver ("Denver") is a municipal entity incorporated under the laws of the State of Colorado.  It is sued because it maintains a ban on handgun carry through a combination of its own laws and its implementation of Colorado law.

7.      "As city ordinances, there is no question that they reflect the 'official policy' of the municipality." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009).

8.      Therefore, the challenged Denver ordinances are official policies of the

3

City of Denver as the term was contemplated by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

9.    "If it turns out that the relevant ordinances are unconstitutional, whether on their face or as applied to [the Plaintiff], the liability falls on the city." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009).

10.    Plaintiffs also challenge Denver's application of state law and Denver is a proper party to challenge its application of state law because Denver has engaged in "express incorporation and adoption of state law and policy." *See Wong v. City & Cty. of Honolulu*, 333 F. Supp. 2d 942, 951 (D. Haw. 2004); *See also Cooper v. Dillon*, 403 F.3d 1208, 1211-13 (11th Cir. 2005) (holding same); *Ness v. City of Bloomington* 11 F.4th 914, 922 (8th Cir. 2021) (same).

11.    Denver adopts state law and policy because Denver, Colo., Rev. Mun. Code § 38-117(a) and (b), as they apply to handguns, largely mirror C.R.S. § 18-12-203's prohibition on carrying handguns concealed without a permit.

12.    Therefore, City and County of Denver is a proper party to this litigation.

13.    Defendant Al Gardner is sued in his official capacity as Executive Director of Public Safety for the City and County of Denver.

14.    The Department of Public Safety oversees Denver's public-safety agencies, including the Denver Police Department and Denver Sheriff Department,

and Denver identifies the Department of Public Safety as having responsibility connected to concealed-handgun permitting.

15.    Gardner is sued because he has supervisory and administrative authority over the Denver officials and agencies responsible for administering, implementing, and enforcing the challenged handgun-carry restrictions.

16.    Defendant Ron Thomas is sued in his official capacity as Chief of Police for the City and County of Denver.

17.    The Denver Police Department is the Denver agency that publicly administers concealed-handgun-permit applications and is also responsible for police enforcement of Denver's firearms ordinances, including Denver Revised Municipal Code § 38-117.

18.    Thomas is sued because his department administers the challenged permitting process and enforces the challenged Denver ordinance against persons who carry firearms in Denver without a permit recognized by Denver.

19.    Defendant Miko Brown is sued in her official capacity as City Attorney for the City and County of Denver.

20.    The Denver City Attorney's Office prosecutes municipal crimes and ordinance violations, including violations charged under Denver municipal law.

21.    Brown is sued because her office is responsible for prosecuting

violations of Denver Revised Municipal Code § 38-117 and therefore has a direct enforcement connection to the challenged ordinance.

22.     Defendant Elias Diggins is sued in his official capacity as the Sheriff of Denver.

23.     The Sheriff of Denver is a state actor for purposes of this litigation because "Colorado law requires 'each sheriff to implement and administer' the [concealed handgun license] licensing scheme. Colo. Rev. Stat. § 18-12-201(3)." *Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir. 2013).

24.     Due to the Sheriff's responsibility to implement and administer the concealed handgun license licensing scheme he has a connection to the enforcement of the challenged statute and falls within the *Ex parte Young*, 209 U.S. 123 (1908) exception to Eleventh Amendment immunity.

25.     Defendant Phil Weiser is sued in his official capacity as the Attorney General of the State of Colorado.

26.     Phil Weiser, in his official capacity as the Attorney General of the State of Colorado, is responsible for enforcing the State of Colorado's laws including those related to the carry of firearms.

27.     Due to the Attorney General Phil Weiser's responsibility to enforce state law he has a connection to the enforcement of the challenged statute and falls

6

within the *Ex parte Young*, 209 U.S. 123 (1908) exception to Eleventh Amendment immunity. *See Chamber of Commerce of the United States v. Edmondson*, 594 F.3d 742 (10th Cir. 2010).

28.    Defendant Stan Hilkey is sued in his official capacity as Executive Director of the Colorado Department of Public Safety. The Department of Public Safety includes the Colorado Bureau of Investigation, which publishes and administers statewide concealed-handgun-permit reciprocity information. Plaintiffs seek prospective relief against Hilkey because the Colorado Department of Public Safety and its subordinate agencies participate in the statewide implementation of the challenged concealed-handgun-permit and reciprocity regime.

### III.    JURISDICTION AND VENUE

29.    This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs assert claims under the Second and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and may award fees under 42 U.S.C. § 1988.

30.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in Colorado, the challenged Denver ordinance is enforced in this District, and a substantial part of the events and omissions giving rise to Plaintiffs'

claims occurred and will occur in this District.

## IV.    STATEMENT OF FACTS

31.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

32.    The Second Amendment guarantees individuals a fundamental right to keep and carry arms for lawful purposes, including self-defense and defense of others. *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010).

33.    The Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen* declared that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" 597 U.S. 1, 24 (2022) (citation omitted).

34.    Colorado state law requires that a person obtain a concealed carry permit in order to carry a handgun concealed. *See* Colo. Rev. Stat. § 18-12-105 (Lexis Advance through Chapter 1 of the 2026 Regular Session, effective as of

8

February 27, 2026) ("(1) A person commits a class 1 misdemeanor if the person knowingly and unlawfully:…(b) Carries a firearm concealed on or about his or her person").

35.    Colorado requires that a person be "a legal resident of the state of Colorado" in order to successfully apply for a concealed carry permit. Colo. Rev. Stat. § 18-12-203.

36.    Colorado recognizes concealed carry permits issued by other states only if those states provide reciprocity to Colorado concealed carry permits. *See* Colo. Rev. Stat. § 18-12-213(1).

37.    Hawaii does not provide reciprocity to Colorado concealed carry permits.

38.    Therefore, Colorado does not recognize Hawaii concealed carry permits.

39.    South Carolina does not provide reciprocity to Colorado concealed carry permits.

40.    Therefore, Colorado does not recognize South Carolina concealed carry permits.

41.    One cannot simply acquire a nonresident permit from another state that has reciprocity with Colorado, as Colorado recognizes only concealed carry permits

issued by the permit holder's state of residence and does not recognize nonresident concealed carry permits issued by other states. *See* Colo. Rev. Stat. § 18-12-213.

42. Open carry is generally allowed under Colorado law.

43. Denver prohibits the open carry of firearms. Denver, Colo., Rev. Mun. Code § 38-117(f).

44. Denver also prohibits the concealed carry of firearms without a permit. *See* Denver, Colo., Rev. Mun. Code § 38-117(a); *see also* Denver, Colo., Rev. Mun. Code § 38-117(b).

45. "The Denver ordinance prohibits or criminalizes the mere carrying of firearms." *Trinen v. City & Cty. of Denver*, 53 P.3d 754, 761 (Colo. App. 2002) (Judge Roy, concurring in part and dissenting in part).

46. Because Colorado will not issue or recognize a concealed-handgun permit for Howeth and Denver prohibits both open carry and concealed carry without a permit, Howeth has no lawful means to carry a handgun for self-defense in Denver.

47. Mr. Howeth is fully qualified to carry a handgun for self-defense other than his status as a nonresident.

48. Mr. Howeth is a resident of the state of Hawaii.

49. Mr. Howeth has a concealed carry permit issued to him by the State of

Hawaii.

50.     Mr. Howeth has a nonresident concealed carry permit issued to him by the State of Utah.

51.     Mr. Howeth is a United States citizen.

52.     Mr. Howeth is over 21 years old.

53.     Mr. Howeth has never committed a crime that prohibits him from firearm ownership under either federal law or Colorado law.

54.     Mr. Howeth does not suffer from any mental illness that would disqualify him from firearm ownership under Colorado or federal law.

55.     Mr. Howeth has never been involuntarily committed to a mental health institution.

56.     Mr. Howeth does not take illegal drugs or abuse alcohol.

57.     Mr. Howeth has read the applicable laws governing the permissible use of firearms and associated requirements in Colorado.

58.     Mr. Howeth is a member of the NRA.

59.     Mr. Howeth has completed all training required by Colorado to receive a concealed carry permit.

60.     Mr. Howeth has obtained a training certificate from a verified firearms instructor showing successful completion of a concealed handgun training class

satisfying Colorado's handgun-competency requirement, in compliance with Colo. Rev. Stat. §§ 18-12-203(1)(h), 18-12-202.5, and 18-12-202.7. Exhibit 1.

61. On or about May 26, 2026, Mr. Howeth applied for a concealed carry permit with the Weld County Sheriff's Department.

62. On May 28, 2026, Mr. Howeth received a phone call from Debbie Berg, who is an employee in charge of processing concealed carry permits for Weld County.

63. On May 28, 2026, Mr. Howeth received an email from Debbie Berg denying him a concealed carry permit because he does not have a Colorado ID. *See* Exhibit 2.

64. Mr. Howeth owns a second home in Weld County, Colorado.

65. Denver International Airport is the main airport in Colorado.

66. Mr. Howeth routinely travels to Denver because he flies into Denver International Airport while traveling to see extended family and friends  and/or going to his second home.

67. Mr. Howeth will routinely stay in Denver to eat, shop, run errands, and engage in other activity after or before a flight.

68. Mr. Howeth will go to Denver while staying at his second home to run errands and engage in other activities.

12

69.     Attached is a receipt Mr. Howeth received after eating at a McDonalds in Denver during a recent trip to Denver. *See* Exhibit 3.

70.     Mr. Howeth plans to continue to regularly travel to Denver for the foreseeable future.

71.     While in Hawaii, Mr. Howeth routinely and legally carries a handgun for self-defense.

72.     Mr. Howeth legally openly carries a handgun outside of Denver where open carry is legal.

73.     While in the 30 plus states where his Utah nonresident concealed carry permit is valid, Mr. Howeth routinely and legally carries a handgun for self-defense.

74.     Mr. Howeth regularly trains with his handgun.

75.     Mr. Howeth has attended many classes and received a significant amount of instruction on how to safely operate in handgun.

76.     In order to qualify for a concealed handgun carry permit in Hawaii, Mr. Howeth had to pass more stringent background checks and mental health screening than is required in Colorado.

77.     In order to qualify for a concealed handgun carry permit in Hawaii, Mr. Howeth had to receive significantly more instruction than is required by Colorado.

78.     In order to qualify for a concealed handgun carry permit in Hawaii, Mr.

13

Howeth had to pass practical testing including a live-fire test that is at least as difficult as required by Colorado if not more so.

79.    Mr. Howeth would carry a handgun openly in Denver for lawful self-defense if the law allowed for it.

80.    Mr. Howeth would carry a handgun concealed in Denver for lawful self-defense if the law allowed for it.

81.    But for the combined effects of Colorado and Denver law, Mr. Howeth would carry a handgun for lawful self-defense either openly or concealed in Denver.

82.    Mr. Howeth's Second Amendment rights have been and are being violated by the combined effect of Denver and Colorado law because the Amendment protects carrying firearms when visiting other states.

83.    Through a combination of Colorado and Denver law, Plaintiff Dougherty has no mechanism to carry a handgun for self-defense either concealed or openly.

84.    Mr. Dougherty is fully qualified to carry a handgun for self-defense other than his status as a nonresident.

85.    Mr. Dougherty is a resident of the state of South Carolina.

86.    Mr. Dougherty is a U.S. citizen.

14

87.    Mr. Dougherty is over 21 years old.

88.    Mr. Dougherty has never committed a crime that prohibits him from firearm ownership under either federal law or Colorado law.

89.    Mr. Dougherty does not suffer from any mental illness that would disqualify him from firearm ownership under Colorado or federal law.

90.    Mr. Dougherty has never been involuntarily committed to a mental health institution.

91.    Mr. Dougherty does not take illegal drugs or abuse alcohol.

92.    Mr. Dougherty has read the applicable laws governing the permissible use of firearms and associated requirements in Colorado.

93.    Mr. Dougherty is a member of the NRA.

94.    On April 19, 2026, Mr. Dougherty attempted to apply for a concealed carry permit through the Denver Police Department's Concealed Handgun Permit Application.

95.    Because he is not a Colorado Resident, the automated system did not allow him to submit an application at all.

96.    Mr. Dougherty lived in Loveland, Colorado, until August of 2025.

97.    Mr. Dougherty's employer is in Loveland, Colorado.

98.    Mr. Dougherty has friends and acquaintances in Denver, Colorado.

99. Denver International Airport is the main airport in Colorado.

100. Mr. Dougherty routinely travels to Denver because he flies into Denver International Airport while traveling to his employer or visit his friends.

101. Mr. Dougherty will routinely stay in Denver to eat, shop, run errands, and engage in other activities after a flight.

102. Mr. Dougherty plans to continue to regularly travel to Denver for the foreseeable future.

103. While in South Carolina, Mr. Dougherty routinely and legally carries a handgun for self-defense.

104. Mr. Dougherty regularly trains with his handgun.

105. Mr. Dougherty regularly engaged in shooting competitions with his firearms.

106. Mr. Dougherty has attended many classes and received a significant amount of instruction on how to safely operate in handgun.

107. Mr. Dougherty would carry a handgun openly in Denver for lawful self-defense if the law allowed for it.

108. Mr. Dougherty would carry a handgun concealed in Denver for lawful self-defense if the law allowed for it.

109. But for the combined effects of Colorado and Denver law, Mr.

16

Dougherty would carry a handgun for lawful self-defense either openly or concealed in Denver.

110. Mr. Dougherty's Second Amendment rights have been and are being violated by the combined effect of Denver and Colorado law because the Amendment protects carrying firearms when visiting other states.

111. The NRA has members—including Howeth and Dougherty—who intend to carry handguns either openly or concealed for self-defense in Denver if such conduct were not prohibited by the combined effects of Denver and Colorado law.

112. These NRA members' Second Amendment rights have been and are being violated by the combined effect of Denver and Colorado law because the Amendment protects carrying firearms when visiting other states.

113. Indeed, the challenged Colorado and Denver laws referenced herein have denied, and will continue to deny, responsible, peaceable, law-abiding adults who are non-residents of Colorado who travel to Denver their fundamental, individual right to keep and bear arms secured under the Second and Fourteenth Amendments of the United States Constitution.

## V.   HISTORICAL BACKGROUND

114.   An extensive volume of historical laws recognize that out-of-state travelers ("nonresidents") had a right to carry firearms for self-defense and often enjoyed greater protections for the carriage of arms than residents who were not traveling.

115.   In 1686, the Province of East Jersey prohibited "privately" wearing various weapons but exempted "all strangers, travelling upon their lawful occasions thro' this Province, behaving themselves peaceably." *See* An Act Against Wearing Swords, ch. 9, N.J. STAT. (W. Bradford 1881) (Law Passed 1686).[1]

116.   An 1813 Kentucky law was perhaps the earliest post-Founding example, prohibiting the concealed carry of certain weapons "unless when travelling on a journey." 1813 Ky. Acts 100, An Act to Prevent Persons in this Commonwealth from Wearing Concealed Arms, Except in Certain Cases, ch. 89, §1, 1812 Ky. Acts 100, 100–101 (Gerard & Berry 1813) (Law Passed 1813).[2]

117.   An 1820 Indiana law was similar, limiting its concealed carry ban by

---

[1]   Available at https://firearmslaw.duke.edu/laws/the-grants-concessions-and-original-constitutions-of-the-province-of-new-jersey-page-289-290-image-293-294-1881-available-at-the-making-of-modern-law-primary-sources.

[2]   Available at https://firearmslaw.duke.edu/laws/1813-ky-acts-100-an-act-to-prevent-persons-in-this-commonwealth-from-wearing-concealed-arms-except-in-certain-cases-ch-89-c2a7-1.

18

stating that it "shall not be so construed as to affect travellers." 1819 Ind. Acts 39, An Act to Prohibit the Wearing of Concealed Weapons.[3]

118.    During the Antebellum Era Tennessee also banned concealed carry but provided express exceptions for travelers. *See* 1821 Tenn. Pub. Acts 1516, An Act to Prevent the Wearing of Dangerous and Unlawful Weapons, ch. 13 ("[N]othing herein contained shall affect … any person that may be on a journey to any place out of his county or state.").[4]

119.    Arkansas also banned concealed carry during the Antebellum Era but provided express exceptions for travelers. Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D. 1837, at 280 (1838) (1837 law applying to every person "unless upon a journey").[5]

120.    Similarly, in 1841, Alabama banned concealed carry but provided express exceptions for travelers. 1841 Ala. Laws 149 (prohibiting concealed carry

---

[3]    Available at https://firearmslaw.duke.edu/laws/1819-ind-acts-39-an-act-to-prohibit-the-wearing-of-concealed-weapons.

[4]    Available at https://firearmslaw.duke.edu/laws/robert-looney-caruthers-a-compilation-of-the-statutes-of-tennessee-of-a-general-and-permanent-nature-from-the-commencement-of-the-government-to-the-present-time-with-references-to-judicial-decisio.

[5] Available at https://firearmslaw.duke.edu/laws/revised-statutes-of-the-state-of-arkansas-adopted-at-the-october-session-of-the-general-assembly-of-said-state-a-d-1837-in-the-year-of-our-independence-the-sixty-second-and-of-the-state-of-second.

"unless such person shall … be travelling, or setting out on a journey").[6]

121.    An 1864 California law barred concealed carry for everyone who was not a "peace officer or traveler." The Statutes of California Passed at the Fourteenth Session of the Legislature, 1863: Begun on Monday, the Fifth Day of January, and Ended on Monday, the Twenty-Seventh Day of April (Sacramento, CA: Benj. P. Avery, 1863), 748. Chapter 485—An Act to Prohibit the Carrying of Concealed Weapons, §§ 1–2. Approved April 27, 1863.[7]

122.    An 1867 Nevada law likewise barred concealed carry for everyone who was not a "peace officer or traveler." 1867 Nev. Stat. 66.[8]

123.    In 1871, Texas instituted a fine for anyone caught "carry[ing] on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for purposes of offense or defense," providing, however, that "[t]he preceding article shall not apply … to persons traveling." The Revised

---

[6] Available at https://firearmslaw.duke.edu/laws/1841-ala-acts-148-49-of-miscellaneous-offences-ch-7-c2a7-4.

[7] Available at https://firearmslaw.duke.edu/laws/an-act-to-prohibit-the-carrying-of-concealed-weapons-ch-485-1-2-1863-cal-stat-748-748-benj-p-avery.

[8] Available at https://firearmslaw.duke.edu/laws/an-act-to-prohibit-carrying-of-concealed-weapons-ch-30-1-2-1867-nev-stat-special-sess-joseph-e-eckley.

Statutes of Texas, 4243 (1879).[9]

124.   In the 1880s, the Arizona Territory banned the carry of "pistol[s]" "within any settlement, town, village or city within this Territory" but exempted "traveling." 1883 Ariz. Sess. Laws 21–22.[10]

125.   In 1887, the New Mexico Territory banned all carry of deadly weapons except that "[p]ersons traveling may carry arms for their own protection while actually prosecuting their journey and may pass through settlements on their road without disarming." 1887 Acts of the Legislative Assembly, of the Territory of New Mexico, Twenty-Seventh Session: Convened at the Capitol, at the City of Santa Fe, on Monday, the 27th Day of December, 1886, and Adjourned on Thursday, the 24th Day of February, 1887 (Las Vegas, NM: J. A. Carruth, 1887), 55–58. Chapter 30—An Act to Prohibit the Unlawful Carrying and Use of Deadly Weapons, §§ 1–15. Approved February 18, 1887.[11]

---

[9] Available at https://firearmslaw.duke.edu/laws/george-washington-paschal-a-digest-of-the-laws-of-texas-containing-laws-in-force-and-the-repealed-laws-on-which-rights-rest-carefully-annotated-page-1322-1324-image-292-294-vol-2-1873-availa

[10] Available at https://firearmslaw.duke.edu/laws/act-of-mar-18-1889-1889-ariz-sess-laws-16-17

[11] Available at https://firearmslaw.duke.edu/laws/an-act-to-prohibit-the-unlawful-carrying-and-use-of-deadly-weapons-feb-18-1887-reprinted-in-acts-of-the-legislative-assembly-of-the-territory-of-new-mexico-twenty-seventh-session-55-58-1887.

126.   An 1878 Mississippi law stated, "Any person, not being threatened with, or having good and sufficient reason to apprehend an attack, or travelling (not being a tramp) or setting out on a journey, or a peace officer, or deputy in discharge of his duties, who carries concealed, in whole or in part, any bowie knife, pistol, brass or metallic knuckles, slung-shot, or other deadly weapon of like kind or description, shall be deemed guilty of a misdemeanor." An Act to Prevent the Carrying of Concealed Weapons, and for Other Purposes, ch. 46, §§ 1–7, 1878 Miss. Laws 175, 175–76 (Power & Barksdale).[12]

127.   Similarly, Oklahoma had a law that prohibited carrying shotguns or rifles except for "hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or *while travelling* or removing from one place to another, and not otherwise." Concealed Weapons, ch. 25, art. 47, §§ 1–10, 1890 Okla. Territory Sess. Laws 495, 495–96 (State Capital Printing Co. 1891) (Law Passed 1890).[13]

---

[12] Available at https://firearmslaw.duke.edu/laws/an-act-to-prevent-the-carrying-of-concealed-weapons-and-for-other-purposes-ch-46-1-7-1878-miss-laws-175-175-76-power-barksdale.

[13] Available at https://firearmslaw.duke.edu/laws/leander-g-pitman-the-statutes-of-oklahoma-1890-from-the-laws-passed-by-the-first-legislative-assembly-of-the-territory-page-496-image-512-guthrie-1891-available-at-the-making-of-modern-law-pr.

128.    The State of Missouri had a ban on the concealed carry of dangerous or deadly weapons but had an express exemption for "persons moving or traveling peaceably through this state." MO. REV. STAT., ch. 24, art. 2, §§ 1274-1278 (Carter & Regan 1879).[14]

129.    Similarly, Tennessee had a law which was in force in 1878 that made it a crime to give a minor a pistol but had an exemption for travelers. "This section makes it a misdemeanor to sell, give, or loan a minor a pistol, or other dangerous weapon, except a gun for hunting, or weapon for defense in traveling." *State v. Callicutt*, 69 Tenn. 714, 714 (1878). Seymour Dwight Thompson, A Compilation of the Statute Laws of the State of Tennessee, of a General and Permanent Nature, Compiled on the Basis of the Code of Tennessee, With Notes and References, Including Acts of Session of 1870-'71 Page 125, Image 794 (Vol. 2, 1873) available at The Making of Modern Law: Primary Sources.[15]

130.    Alabama had a law that prohibited the carry of concealed weapons including firearm with an exemption for those "traveling, or setting out on a

---

[14] Available at https://firearmslaw.duke.edu/laws/mo-rev-stat-ch-24-art-2-1274-1278-carter-regan-1879.

[15] Available at https://firearmslaw.duke.edu/laws/seymour-dwight-thompson-a-compilation-of-the-statute-laws-of-the-state-of-tennessee-of-a-general-and-permanent-nature-compiled-on-the-basis-of-the-code-of-tennessee-with-notes-and-references-incl-2.

journey." Wade Keyes, The Code of Alabama, 1876: with References to the Decisions of the Supreme Court of the State upon the Construction of the Statutes; and in Which the General and Permanent Acts of the Session of 1876-7 have been Incorporated Page 882, Image 898 (1877).[16]

131.    In 1899, Wyoming prohibited every person "not being a traveler" from carrying concealed pistols and other deadly weapons. Josiah A. Van Orsdel, Attorney General, Revised Statutes of Wyoming, in Force December 1, 1899 Including the Magna Charta, Declaration of Independence, Articles of Confederation, Organic Act of Territory of Wyoming, Act of Admission of the State of Wyoming, Constitution of the United States and of Wyoming, and the Rules of the Supreme Court Page 1253, Image 1253 (1899).[17]

132.    In 1820, Indiana passed a law that said, "any person wearing any dirk, pistol, sword in cane, or any other unlawful weapon, concealed, shall be deemed

---

[16]    Available at https://firearmslaw.duke.edu/laws/wade-keyes-the-code-of-alabama-1876-with-references-to-the-decisions-of-the-supreme-court-of-the-state-upon-the-construction-of-the-statutes-and-in-which-the-general-and-permanent-acts-of-the-ses.

[17]    Available at https://firearmslaw.duke.edu/laws/josiah-a-van-orsdel-attorney-general-revised-statutes-of-wyoming-in-force-december-1-1899-including-the-magna-charta-declaration-of-independence-articles-of-confederation-organic-act-of-territ-2.

guilty of a misdemeanor…Provided however, that this act shall not be so construed as to affect travellers." An Act to Prohibit the Wearing of Concealed Weapons, ch. 23, § 1, 1820 Ind. Acts 39, 39 (Isaac Cox). [18]

133.   In 1831, Indiana passed a law providing that, "every person, not being a traveller, who shall wear or carry a dirk, pistol, sword in a cane, or other dangerous weapon concealed" was guilty of a crime. An Act Relative to Crime and Punishment, ch. 26, § 58, 1831 Ind. Acts 180, 192 (Douglas & Maguire).[19]

134.   In 1859 Indiana passed a law stating that "[e]very person, not being a traveler, who shall wear or carry any dirk, pistol, bowie-knife, dagger, sword-in-cane, or any other dangerous or deadly weapon concealed" was guilty of a crime. 1859 Ind. Acts 129, An Act to Prevent Carrying Concealed or Dangerous Weapons, and to Provide Punishment Therefor.[20]

135.   In 1881, Indiana passed a virtually identical law as the one above that said "[e]very person, not being a traveler, who shall wear or carry any dirk, pistol, bowie-knife, dagger, sword-in-cane, or any other dangerous or deadly weapon

---

[18]   Available at https://firearmslaw.duke.edu/laws/1819-ind-acts-39-an-act-to-prohibit-the-wearing-of-concealed-weapons.

[19] Available at https://firearmslaw.duke.edu/laws/1831-ind-acts-192-c2a7-58.

[20]   Available at https://firearmslaw.duke.edu/laws/an-act-to-prevent-carrying-concealed-or-dangerous-weapons-and-to-provide-punishment-therefor-ch-78-1-1859-ind-acts-129-129-john-c-walker.

concealed" was guilty of a crime. Revised Statutes of Indiana: Containing, Also, the United States and Indiana Constitutions and an Appendix of Historical Documents Page 371-372, Image 393-394 (Vol. 1, 1881) available at The Making of Modern Law: Primary Sources.[21]

136.   Many cities and/or municipalities had similar traveler exemptions.

137.   The City of Oakland, California had a traveler exemption law. Fred L. Button, ed., General Municipal Ordinances of the City of Oakland, California (Oakland, CA; Enquirer, 1895), p. 218, sec. 1, citing An Ordinance to Prohibit the Carrying of Concealed Weapons, No. 1141[22] ("It shall be unlawful for any person in the City of Oakland, not being a public officer or a traveler actually engaged in making a journey, to wear or carry concealed about his person without a permit, as hereinafter provided, any pistol.").

138.   Sacramento, California also had a traveler exemption law. Ordinance no. 84, Charter and Ordinances of the City of Sacramento, Prohibiting the Carrying

---

[21] Available at https://firearmslaw.duke.edu/laws/james-s-frazer-commissioner-the-revised-statutes-of-indiana-containing-also-the-united-states-and-indiana-constitutions-and-an-appendix-of-historical-documents-page-371-372-image-393-394-vol.

[22] Available at https://firearmslaw.duke.edu/laws/fred-l-button-ed-general-municipal-ordinances-of-the-city-of-oakland-california-oakland-ca-enquirer-1895-p-218-sec-1-an-ordinance-to-prohibit-the-carrying-of-concealed-weapons-no-1141.

of Concealed Deadly Weapons (1876)  ("It shall be unlawful for any person, not being a public officer or traveler, or not having a permit from the Police Commissioners of the City of Sacramento, to wear or carry, concealed, any pistol, dirk, or other dangerous or deadly weapon.").[23]

139.   Los Angeles, California likewise banned all carry of certain "dangerous and deadly" weapons in 1878, unless carried by "persons actually traveling." Revised Charter and Compiled Ordinances and Resolutions of the City of Los Angeles 83 (Wm. M. Caswell ed., 1878).[24]

140.   Fresno had a similar law. "Any person excepting peace officers and travelers, who shall carry concealed upon his person any pistol or firearm, slungshot, dirk or bowie-knife, or other deadly weapon, without a written permission (revocable at any time) from the president of the board of trustees, is guilty of a misdemeanor." L. W. Moultrie, Charter and Ordinances of the City of Fresno Page 30, Image 28 (1896).[25]

---

[23]  Available at https://firearmslaw.duke.edu/laws/prohibiting-the-carrying-of-concealed-deadly-weapons-ordinance-no-84-charter-and-ordinances-of-the-city-of-sacramento-1876.

[24]  Available at https://firearmslaw.duke.edu/laws/ordinance-no-8-los-angeles-daily-herald-apr-12-1889-at-7-los-angeles-california.

[25]  Available at https://firearmslaw.duke.edu/laws/l-w-moultrie-charter-and-ordinances-of-the-city-of-fresno-page-30-image-28-1896-available-at-the-making-of-modern-law-primary-sources.

141.   Fresno passed a similar law in 1885. "Ordinance No. 6" The Fresno Weekly Republican, November 7, 1885, p. 3. Volume 10, Number 9.[26]

142.   Marysville had a similar ordinance. "It shall be unlawful for any person, not being a public officer or traveler, or not having a written permit from the Marshal of the city of Marysville, to wear or carry concealed, or otherwise, within the limits of the city of Marysville, any pistol, dirk, or other dangerous or deadly weapon." "An Ordinance to Prohibit the Carrying of Concealed Deadly Weapons." Marysville Daily Democrat, February 7, 1889, p. 4. Volume 9, Number 85. (Marysville, CA).[27]

143.   In 1888 the town of Lompoc, California had an ordinance that banned concealed pistol carry, but not for travelers: "It shall be unlawful for any person not being a public officer or traveler, or not having a written permit from the President of the Board of Trustees of the Town of Lompoc, to wear or carry concealed, within the corporate limits of the Town of Lompoc, any pistol." *See* Ordinance No. 10: An Ordinance Prohibiting the Carrying of Concealed Deadly Weapons, and Fixing the

---

[26] Available at https://firearmslaw.duke.edu/wp-content/uploads/2023/08/1885-The-Fresno-Republican-1.pdf.

[27] Available at https://firearmslaw.duke.edu/laws/an-ordinance-to-prohibit-the-carrying-of-concealed-deadly-weapons-marysville-daily-democrat-feb-7-1889-at-4.

Penalty Therefor. The Lompoc Record, August 21, 1888, p. 2. Number 23; Volume 14.[28]

144. San Diego had a similar traveler exemption in their concealed carry ordinance. "It shall be unlawful for any person not being a peace officer or traveler, not having a permit from the President of the Board of Trustees of said city to wear or carry concealed about his person, within the limits of said city, any pistol…" City of San Diego, Digital Archives, Ordinance Number 19—An Ordinance for the Prevention of Offenses Against the Peace, Good Order and Health of the City of San Diego, §§ 2, 3, 39, & 41. Ordinances 1 - 50 (June 14, 1886 - January 24, 1887) in Ordinance Files 1850 – 1894.[29]

145. Modesto had a similar traveler exemption in their concealed carry ordinance: "It shall be unlawful for any person not being a public officer or traveler, not having a written permit from the President of the Board of Trustees to wear or carry concealed about his person within the corporate limits of the City of Modesto any pistol." Ordinance no. 15—An Ordinance to Prohibit the Discharge of Fire Arms and the Carrying of Deadly or Concealed Weapons within the Corporate

---

[28] Available at https://firearmslaw.duke.edu/laws/an-ordinance-prohibiting-the-carrying-of-concealed-deadly-weapons-and-fixing-the-penalty-therefor-no-10-the-lompoc-record-aug-25-1888-at-2

[29] Available at https://firearmslaw.duke.edu/laws/ordinance-no-19-2-3-39-41-board-of-trustees-of-the-city-of-san-diego-1886-san-diego-california

Limits of the City of Modesto, §§ 1-5. Modesto City Council Ordinances Passed from 1884 to 1899 (#1 - #185). Introduced September 19, 1884; Passed September 16, 1884; Published in the Modesto Herald October 2, 1884.[30]

146.   San Francisco had a similar law. "It shall be unlawful for any person, not being a public officer or traveler, or not having a permit from the Police Commissioners of this city and county, to wear or carry concealed, in this city and county, any pistol, dirk or other dangerous or deadly weapon." General Orders of the Board of Supervisors Providing Regulations for the Government of the City And County of San Francisco: Also, Ordinances of Park Commissioners (San Francisco: P.J. Thomas, 1884), 8. General Order no. 1,603—Relating to the Police Department, § 22—Prohibiting the Carrying of Concealed Deadly Weapons. Approved September 17, 1880.[31]

147.   Eureka had a similar law.  "It shall be unlawful for any person not being a public officer, or traveler, or not having a permit from the Mayor of this city, to wear or carry concealed, within the corporate limits of this city, any pistol, dirk, or

---

[30] Available at https://www.modestogov.com/ArchiveCenter/ViewFile/Item/3958 and https://firearmslaw.duke.edu/laws/ordinance-no-15-1-5-board-of-trustees-of-the-city-of-modesto-1884-modesto-california

[31] Available at https://firearmslaw.duke.edu/laws/prohibiting-the-carrying-of-concealed-deadly-weapons-c2a7-22-of-general-order-no-1603-relating-to-the-police-department-general-orders-of-the-board-of-supervisors-providing-regulations-f

any other dangerous or deadly weapon." Charter and Revised Ordinances of the City of Eureka (Eureka, CA: Standard Print, 1905), 251. Penal Ordinances, Ordinance No. 55— Prohibiting the Carrying of Concealed Weapons, §§ 1-4. Approved November 6, 1878.[32]

148. In 1888, Dallas banned the carry of pistols with an exception for "persons traveling." Ordinances of the Council of the City of Dallas and Annual Reports of City Officers from October 1st, 1886 to June 25th, 1888 Page 80, Image 80 (1888) available at The Making of Modern Law: Primary Sources.[33]

149. In 1880, Austin banned the carry of pistols with an exception for "persons traveling." An Ordinance Prohibiting the Unlawful Carrying of Arms, DAILY DEMOCRATIC STATESMAN, May 29, 1880, at 4 (Austin, TX).[34]

150. In 1889, the town of McKinney banned the carry of pistols with an exception for "persons traveling." Revised Code of Ordinances of the City of Mckinney Page 13, Image 14 (1899) available at The Making of Modern Law:

---

[32] Available at https://firearmslaw.duke.edu/laws/ordinance-no-55-prohibiting-the-carrying-of-concealed-weapons-c2a7c2a7-1-4-in-charter-and-revised-ordinances-of-the-city-of-eureka-1878

[33] Available at https://firearmslaw.duke.edu/laws/ordinances-of-the-council-of-the-city-of-dallas-and-annual-reports-of-city-officers-from-october-1st-1886-to-june-25th-1888-page-80-image-80-1888-available-at-the-making-of-modern-law-primary-so

[34] Available at https://firearmslaw.duke.edu/laws/an-ordinance-prohibiting-the-unlawful-carrying-of-arms

Primary Sources.[35]

151.    The town of Eufaula, Alabama had a ban on the concealed carry of pistols which had an express exemption for those traveling. Penal Code, ch. 26, §§ 208, 222–223, 234–235, & 247, EUFAULA, ALABAMA, THE CODE OF ORDINANCES OF THE CITY (Alabama Baptist Print 1886).[36]

152.    Woodland, California had a similar ordinance. It prevented carrying concealed, deadly or dangerous weapons, but exempted, "persons moving or traveling peaceably through this state." WOODLAND, CALIFORNIA, THE CHARTER AND ORDINANCES OF THE CITY, pt. 3, Ordinance no. 66, §§ 1–4 (Lee & Warren's Job Printing Office 1893) (Law Passed 1886).[37]

153.    Columbia, MO banned the concealed carry of pistols and other deadly or dangerous weapons, but exempted "persons moving or traveling peaceably through the state." Carrying Concealed Weapons—Firing Guns, Pistols, Fire Crackers, etc., Ch. 17, §§ 160-164 in General Ordinances of the Town of

---

[35] Available at https://firearmslaw.duke.edu/laws/revised-code-of-ordinances-of-the-city-of-mckinney-page-13-image-14-1899-available-at-the-making-of-modern-law-primary-sources

[36] Available at https://firearmslaw.duke.edu/laws/penal-code-ch-26-208-222-223-234-235-247-eufaula-alabama-the-code-of-ordinances-of-the-city-alabama-baptist-print-1886

[37] Available at https://firearmslaw.duke.edu/laws/woodland-california-the-charter-and-ordinances-of-the-city-pt-3-ordinance-no-66-1-4-lee-warrens-job-printing-office-1893-law-passed-1886.

Columbia.[38]

154.   In 1879, Boise City, Idaho, banned the carry of pistols "unless such person be traveling or stepping out on a journey." Charter and Revised Ordinances of Boise City, Idaho. In Effect April 12, 1894 Page 118-119, Image 119-120 (1894) available at The Making of Modern Law: Primary Sources.[39]

155.   In 1898, Blomfield, Illinois, prohibited the concealed carry of dangerous or deadly weapons, but exempted, "persons moving or traveling through this state." Carrying Deadly Weapons, Discharging Fire-Arms, etc., Ch. 12, Art. 3, §§ 50-52, in The Revised Ordinances of the City of Bloomfield (1898).[40]

156.   In 1881, Greenville, Mississippi had a ban on the concealed carry of pistols and some other weapons but had an exemption for those "traveling, or setting out on a journey." Ordinance No. III: Crimes and Misdemeanors, GREENVILLE TIMES, Dec. 31, 1881, at 2 (Greenville, Mississippi).[41]

---

[38] Available at https://firearmslaw.duke.edu/laws/carrying-concealed-weapons-firing-guns-pistols-fire-crackers-etc-ch-17-c2a7c2a7-160-164-in-general-ordinances-of-the-town-of-columbia.

[39] Available at https://firearmslaw.duke.edu/laws/charter-and-revised-ordinances-of-boise-city-idaho-in-effect-april-12-1894-page-118-119-image-119-120-1894-available-at-the-making-of-modern-law-primary-sources.

[40] Available at https://firearmslaw.duke.edu/laws/carrying-deadly-weapons-discharging-fire-arms-etc-ch-12-art-3-c2a7c2a7-50-52-in-the-revised-ordinances-of-the-city-of-bloomfield-1898.

[41] Available at https://firearmslaw.duke.edu/laws/ordinance-no-iii-crimes-and-misdemeanors-greenville-times-dec-31-1881-at-2-greenville-mississippi.

157.    In 1886, Pascagoula, Mississippi had a ban on the concealed carry of weapons but had an exemption for those "traveling on a journey." Board of Mayor and Aldermen." The Pascagoula Democrat-Star, April 30, 1886, p. 3. Volume 42; Number 9. Ordinance of April 23, 1886. Passed April 23, 1886.[42]

158.    In 1879, the City of Montgomery prohibited the concealed carry of pistols and other firearms but included an exemption for those "travelling or setting out on a journey." J. M. Falkner, The Code of Ordinances of the City Council of Montgomery, with the Charter Page 148-49, Image 148-49 (1879) available at The Making of Modern Law: Primary Sources.[43]

159.    In 1871, Lebanon, Tennessee banned the concealed carry of pistols and other dangerous weapons but had an exemption for those "on a journey." Misdemeanors, ch. 20, §§ 19, 22–23, 27, LEBANON, TENNESSEE, A COMPILATION OF THE LAWS AND ORDINANCES OF THE CORPORATION (Wade & White 1871).[44]

---

[42] Available at https://firearmslaw.duke.edu/laws/ordinance-of-april-23-1886-the-pascagoula-democrat-star-apr-30-1886-at-3-pascagoula-mississippi.
[43] Available at https://firearmslaw.duke.edu/laws/j-m-falkner-the-code-of-ordinances-of-the-city-council-of-montgomery-with-the-charter-page-148-49-image-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-available-at-the-making-of-modern-law-primary-sources
[44] Available at https://firearmslaw.duke.edu/laws/misdemeanors-ch-20-19-22-23-27-lebanon-tennessee-a-compilation-of-the-laws-and-ordinances-of-the-corporation-wade-white-1871

160.   In 1862, the City of Selma banned the concealed carry of firearms and some other weapons but exempted anyone who was "being upon or about to start upon a journey." SELMA, CODE OF THE CITY, ch. 7, §§ 270 & 275 (Job and Book Office 1862).[45]

161.   In 1897, De Queen, Arkansas had a complete ban on the carry of most pistols and some other weapons "[p]rovided further that nothing in the ordinance shall prohibit any person from carrying any weapon when upon a journey." "Weapons." De Queen Bee, December 24, 1897, p. 8. Volume 1; Number 30. Weapons, §§ 1–2. Undated.[46]

162.   In 1898, Ardmore, Oklahoma Territory had a complete ban on the carry of most pistols and some other weapons "provided, further, that nothing in this ordinance be so construed as to prohibit any person from carrying a weapon when upon a journey." (Spelled "jorney" in original source document.). "City Ordinances." The Daily Ardmoreite, July 19, 1898, pp. 1 & 3. Volume 5; Number 224. Ordinance Number 9—Concealed Weapons, §§ 1-5. Approved July 18,

---

[45] Available at https://firearmslaw.duke.edu/laws/selma-code-of-the-city-ch-7-270-275-job-and-book-office-1862

[46] Available at https://firearmslaw.duke.edu/laws/weapons-1-2-de-queen-bee-dec-24-1897-at-8-de-queen-arkansas

1898.[47]

163.   In 1899, the Indian Territories banned the carry of most pistols and some other weapons [p]rovided, further that nothing in this act be so construed as to prohibit any person from carrying any weapon when upon a journey." Dorset Carter, Annotated Statutes of the Indian Territory: Embracing All Laws of a General and Permanent Character in Force at the Close of the Second Session of the Fifty-fifth Congress Page 243-244, Image 327-328 (1899) available at The Making of Modern Law: Primary Sources.[48]

164.   In 1893, Macon, Mississippi banned the concealed carry of pistols and other deadly weapons but had an exemption for those "traveling (not being a tramp) or setting out on a journey." Ordinance no. 12, §§ 1–3, MACON BEACON, Feb. 18, 1893, at 3 (Macon, Mississippi).[49]

165.   In 1897, Mena, Arkansas banned the carry of most pistols and other deadly weapons "[p]rovided further that nothing in this ordinance shall prohibit any

---

[47] Available at  https://firearmslaw.duke.edu/laws/ordinance-no-9-1-5-the-daily-ardmoreite-jul-19-1898-at-1-3-ardmore-oklahoma-territory

[48] Available at https://firearmslaw.duke.edu/laws/dorset-carter-annotated-statutes-of-the-indian-territory-embracing-all-laws-of-a-general-and-permanent-character-in-force-at-the-close-of-the-second-session-of-the-fifty-fifth-congress-page-243-244.

[49] Available at https://firearmslaw.duke.edu/laws/ordinance-no-12-1-3-macon-beacon-feb-18-1893-at-3-macon-mississippi.

person from carrying any weapon when upon a journey." Ordinance No. 90." The Mena Weekly Star, October 13, 1897, p. 4. Volume 11; Number 9. Ordinance no. 90, §§ 1–3. Passed and approved October 8, 1897.[50]

166.  In 1899, Green Forest, Arkansas banned the carry of most pistols and other deadly weapons "[p]rovided further, nothing in this ordinance be so construed as to prohibit any person from carrying any weapon when upon a journey. "Ordinance 21." The Green Forest Tribune, May 11, 1899, p. 1. Ordinance 21— An Ordinance making it a misdemeanor to carry weapons within the corporate limits of Green Forest, prescribing penalty, §§ 1-6. Approved May 3, 1899. Volume 10, Number 3. (Green Forest, Arkansas).[51]

167.  In 1899, San Antonio, Texas passed a law that prohibited the carry of pistols and many other deadly weapons "within the corporate limits of the city of San Antonio." However, the law stated "[t]he preceding section shall not apply… to persons travelling." Theodore Harris, Charter and Ordinances of the City of San Antonio. Comprising All Ordinances of a General Character in Force August 7th, 1899 Page 183-184, Image 188-189 (1899) available at The Making of Modern

---

[50] Available at https://firearmslaw.duke.edu/laws/ordinance-no-90-1-3-the-mena-weekly-star-oct-13-1897-at-4-mena-arkansas.

[51] Available at https://firearmslaw.duke.edu/laws/ordinance-21-green-forest-tribune-may-11-1899-at-1-green-forest-arkansas.

Law: Primary Sources.[52]

168.   In 1899, Jerome, Arizona prohibited the public carry of firearms and many other deadly weapons, but the law did not apply "to any persons traveling peacefully through the town of Jerome." Ordinance no. 2, §§ 1, 6, 7, & 21–23, JEROME, ARIZONA, ORDINANCES OF THE TOWN (Jerome News 1906) (Law Passed 1899).[53]

169.   In 1894, Huntsville, Missouri prohibited the concealed carry of deadly or dangerous weapons but exempted "persons moving or travelling peaceably through this state." The Revised Ordinances of the City of Huntsville, Missouri, of 1894. Collated, Revised, Printed and Published by Authority of the Mayor and Board of Aldermen of the City of Huntsville, Missouri, Under an Ordinance of the Said City, Entitled: "An Ordinance in Relation to Ordinances, and the Publication Thereof." Approved on the 11th Day of June, 189 Page 58-59, Image 58-59 (1894) available at The Making of Modern Law: Primary Sources.[54]

---

[52] Available at https://firearmslaw.duke.edu/laws/theodore-harris-charter-and-ordinances-of-the-city-of-san-antonio-comprising-all-ordinances-of-a-general-character-in-force-august-7th-1899-page-183-184-image-188-189-1899-available-at-the-makin.

[53] Available at https://firearmslaw.duke.edu/laws/ordinance-no-2-1-6-7-21-23-jerome-arizona-ordinances-of-the-town-jerome-news-1906-law-passed-1899.

[54] Available at https://firearmslaw.duke.edu/laws/the-revised-ordinances-of-the-city-of-huntsville-missouri-of-1894-collated-revised-printed-and-published-by-

170.    In 1894, Alameda County, California passed a law that made it unlawful for any person not being a public officer or traveler, or not having a permit…to wear or carry, concealed, any pistol, dirk, brass or iron knuckles, sand club, slung shot, or other dangerous or deadly weapon." Ordinance no. 148, §§ 10-14, 48, 61, & 84, ALAMEDA, CHARTER AND GENERAL ORDINANCES (Argus 1894) (Passed 1890).[55]

171.    In 1883, Prescott, Arizona prohibited the carry of deadly weapons within the city limits but exempted "persons moving or traveling peaceably through the city of Prescott." Ordinance no. 31, §§ 1-5, Mayor and Common Council of the City of Prescott (1883) (Prescott, Arizona).[56]

172.    In 1869, Bedford, Indiana passed a law which stated "[e]very person, not being a traveler, who shall wear or carry any dirk, pistol, bowie knife, dagger, sword in cane, or any other dangerous or deadly weapon concealed, or who shall carry or wear such weapon with the intent and avowed purpose of injuring his fellow man, shall, upon conviction thereof, be fined in any sum not more than ten

---

[55] authority-of-the-mayor-and-board-of-aldermen-of-the-city-of-huntsville-missouri-under.

[55] Available at https://firearmslaw.duke.edu/laws/ordinance-no-148-11-14-48-61-84-alameda-charter-and-general-ordinances-argus-1894-passed-1890.

[56] Available at https://firearmslaw.duke.edu/laws/ordinance-no-31-1-5-mayor-and-common-council-of-the-city-of-prescott-1883-prescott-arizona.

dollars." Ordinance No. 1: Protecting Public Morality, Order and Safety, undated, reprinted in Ordinances of the Town of Bedford (1869) (Indiana).[57]

173.   In 1869, Van Bruen, Arkansas passed a law prohibiting the carry of firearms and other deadly weapons but exempted "travelers in transit through the city." Fire-Arms Ordinance of May 1, 1869, §§ 1–6, THE VAN BUREN PRESS, May 4, 1869, at 2 (Van Buren, Arkansas).[58]

174.   In 1867, Memphis, Tennessee prohibited the "carrying a dirk-sword cane, Spanish stiletto, belt or pocket pistol, or other dangerous weapons, either openly or concealed, except in the public service or for defense while traveling." Special Order, §§ 1700-1702, PUBLIC LEDGER, Dec. 30, 1867, at 3 (Memphis, Tennessee).[59]

175.   In 1867, Memphis, Tennessee also had a law which prohibited selling to a minor a pistol or other dangerous weapons "except a gun for hunting or weapon for defense in traveling." William H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, from 1826 to 1867, Inclusive, Together with

---

[57] Available at https://firearmslaw.duke.edu/laws/ordinance-no-1-protecting-public-morality-order-and-safety-undated-reprinted-in-ordinances-of-the-town-of-bedford-1869-indiana.

[58] Available at https://firearmslaw.duke.edu/laws/fire-arms-ordinance-of-may-1-1869-1-6-the-van-buren-press-may-4-1869-at-2-van-buren-arkansas.

[59] Available at  https://firearmslaw.duke.edu/laws/special-order-1700-1702-public-ledger-dec-30-1867-at-3-memphis-tennessee.

the Acts of the Legislature Relating to the City, with an Appendix Page 50, Image 50 (1867) available at The Making of Modern Law: Primary Sources.[60]

176.   In 1866, Indianapolis, Indiana, made it "unlawful for any person, other than a traveler, to carry or wear, concealed about his person, any dirk, bowie knife, dagger, sword in cane, brass knucks, slung shots, or any other dangerous or deadly weapons." An Ordinance Defining Sundry Offenses, and Prescribing Punishment Therefor, §§ 4–6, INDIANAPOLIS, INDIANA, THE CHARTER AND GENERAL ORDINANCES OF THE CITY (Sentinel Company 1875) (Law Passed 1866).[61]

177.   In 1855, New Albany, Indiana passed a law which made it illegal "for any person, not being a traveler to wear or carry, within the corporate limits of the city of New Albany, any brass or other metallic knucks, slung-shot, dirk, pistol, sword in a cane, or other dangerous weapon concealed." An Ordinance to Prohibit the Wearing or Carrying of Concealed Weapons in the City of New Albany, §§ 1–

---

[60] Available at https://firearmslaw.duke.edu/laws/william-h-bridges-digest-of-the-charters-and-ordinances-of-the-city-of-memphis-from-1826-to-1867-inclusive-together-with-the-acts-of-the-legislature-relating-to-the-city-with-an-appendix-page-50.

[61] Available at https://firearmslaw.duke.edu/laws/an-ordinance-defining-sundry-offenses-and-prescribing-punishment-therefor-4-6-indianapolis-indiana-the-charter-and-general-ordinances-of-the-city-sentinel-company-1875-law-passed-1866.

3, NEW ALBANY, INDIANA, LAWS, GENERAL AND SPECIAL, OF THE CITY (R. J. L. Matthews 1870) (Law Passed 1855).[62]

178.   The "how" of these laws was to give additional firearm carry rights when traveling.

179.   The "why" i.e. the purpose of these laws was to allow travelers to protect themselves from the dangers of the road which typically did not exist when home. *See Carr v. State*, 34 Ark. 448, 449 (1879) ("The exception [for journeys] in [a statute proscribing concealed carry of a pistol] is to enable travelers to protect themselves on the highways, or in transit through populous places."); *See also Hathcote v. State*, 17 S.W. 721, 722 (Ark. 1891) ("The exception [for journeys] was designed to permit it when necessary to defend against perils of the highway to which strangers are exposed, and that are not supposed to exist among one's own neighbors.").

180.   Travelers included "persons *who are on a journey out of their State* or county." *See Smith v. State*, 50 Tenn. 511, 511 (1872) (emphasis added).

---

[62] Available at https://firearmslaw.duke.edu/laws/an-ordinance-to-prohibit-the-wearing-or-carrying-of-concealed-weapons-in-the-city-of-new-albany-1-3-new-albany-indiana-laws-general-and-special-of-the-city-r-j-l-matthews-1870-law-passed-1855

181. As shown above, there is no historical justification for a ban on nonresidents carrying firearms.

182. Since *Bruen*, three federal courts have found bans on carry by nonresidents unconstitutional. *See Hoffman v. Bonta*, 789 F. Supp. 3d 995 (S.D. Cal. 2025) (California); *Cal. Rifle & Pistol Ass'n v. L.A. Cty. Sheriff's Dep't*, 745 F. Supp. 3d 1037 (C.D. Cal. 2024) (California law on a preliminary injunction); *Higbie v. James*, 795 F. Supp. 3d 307 (N.D.N.Y. 2025) (New York);

183. One federal court has issued a stipulated injunction that enjoined Hawaii's nonresident ban in a Second Amendment challenge. *See* Stipulated Final Judgment and Permanent Injunction, *Solinsky v. Lopez*, No. 1:26-cv-00117-JAO-RT (D. Haw. Apr. 15, 2026), ECF No. 19.

184. In striking down Massachusetts's may-issue permitting system for nonresidents, the Mass. Supreme Court rejected the State's argument that "[t]he nation's historical tradition of firearm regulation[…]includes restrictions against nonresidents." *Commonwealth v. Donnell*, 495 Mass. 471, 480, 252 N.E.3d 475, 483 (2025). "While we acknowledge the relevance of those historical regulations to the aspects of the Commonwealth's nonresident firearm licensing scheme that define "prohibited persons," they do not justify the discretion conferred on the State police colonel or his designee to deny a license to an otherwise qualified, law-

abiding citizen." *Id.*

185.    In *Smith v. District of Columbia*, 568 F. Supp. 3d 55 (D.D.C. 2021), the district court found that nonresidents of D.C. have Second Amendment rights. There, Plaintiffs were "four non-residents and two residents of the District of Columbia who, over the course of time between May 15, 2012, and October 10, 2014, were arrested by the Metropolitan Police Department ("MPD") on gun-related charges." *Id* at 58-59. "The same set of laws barred non-residents from obtaining a gun registration, and then permitted the arrest of non-residents for carrying weapons or ammunition without a license." *Id* at 63–64.  The Court found "[t]hese laws go to the core of the Second Amendment, which preserves the 'right of responsible citizens to carry firearms for personal self-defense beyond the home, subject to longstanding restrictions.'" *Id* at 64 (quoting *Wrenn v. District of Columbia*, 431 U.S. App. D.C. 62, 864 F.3d 650, 667 (2017)). Thus, in ruling for the nonresident Plaintiffs, the Court made an express finding that nonresidents have Second Amendment rights in D.C.

<u>**COUNT I**</u>
<u>U.S. CONST., AMEND. II as Made Applicable to the States by U.S. CONST., AMEND. XIV</u>

186.  Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

44

187.  The Second Amendment to the United States Constitution states, in pertinent part, that "the right of the people to keep and bear Arms, shall not be infringed."

188.  The Second Amendment is fully applicable to the States and localities through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

189.  The Supreme Court has held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10 (2022), and further, that "the Second Amendment has the same meaning in all parts of the United States," *Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723, at *11 (U.S. June 25, 2026).

190.  The Court has additionally made clear that the right to publicly carry firearms can be restricted only under "exceptional circumstances," *Bruen*, 597 U.S. at 38, and that any such restriction must be "consistent with the Nation's historical tradition of firearm regulation," *id.* at 24.

191.  The combined effect of the challenged Colorado and Denver laws is to completely prohibit Mr. Howeth, Mr. Dougherty, members of the NRA who do not reside in Colorado, and other law-abiding citizens the ability to carry a firearm for

45

self-defense.

192.  Therefore, the burden is on the government to justify the combined effect of Denver and Colorado law by affirmatively proving a comparable national historical tradition of firearm regulation. *See id.* at 17, 24.

193.  Defendants will not be able to do that because there is no tradition of prohibiting the carrying of firearms by law-abiding citizens. Moreover, historically, out-of-state travelers—*i.e.*, nonresidents—had a right to carry firearms for self-defense and often received more firearms rights than residents who were not traveling. *See supra* § V.

194.  Therefore, the combined effect of Colorado and Denver law violates the Second Amendment both as applied to Plaintiffs and facially, and thus, Plaintiffs seek declaratory and injunctive relief as set forth below.

## COUNT II
### Declaratory Relief Under 28 U.S.C. § 2201

195.   Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

196.   The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

197.   Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future.

198.   There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

199.   This Court possesses an independent basis for jurisdiction over the parties.

200.   Plaintiffs request a declaratory judgment declaring that Defendants' laws, customs, rules, habits and policies, and Colo. Rev. Stat. §§ 18-12-203 and 18-12-213, and Denver Revised Municipal Code § 38-117(a), (b), and (f), which deny Plaintiffs any means to lawfully carry a firearm in Denver, violate Plaintiffs' Second Amendment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.    An order preliminarily and permanently enjoining Defendants, and all persons bound under Federal Rule of Civil Procedure 65(d)(2), from applying or enforcing C.R.S. § 18-12-203, § 18-12-213, and Denver, Colo., Rev. Mun. Code § 38-117(a), (b), and (f), in conjunction with one another, so as to leave the individual Plaintiffs, members of Plaintiff National Rifle Association of America, and residents of states whose concealed-carry permits are not valid in Colorado without any lawful means of carrying a handgun in public for self-defense in Denver both facially and as applied to the litigants;

2.    A declaration that the combined operation of C.R.S. § 18-12-203, § 18-12-213, and Denver, Colo., Rev. Mun. Code § 38-117(a), (b), and (f), insofar as it produces a complete ban on handgun carry, violates the Second and Fourteenth Amendments both facially and as applied to the individual Plaintiffs, members of Plaintiff National Rifle Association of America, and residents of states whose concealed-carry permits are not valid in Colorado;

3.    An award of nominal damages;

4.    An award of compensatory damages;

48

5.    An award of costs of suit, including attorney fees pursuant to 42 U.S.C. §1988;

6.    Such other and further relief as the Court deems just and appropriate.

Dated:  August 12, 2026.                    Respectfully submitted,

/s/ Matthew Larosiere                       /s/ Alan Beck
Matthew Larosiere                           Alan Alexander Beck
The Law Office of Matthew                   Law Office of Alan Beck
Larosiere                                   2692 Harcourt Drive
6964 Houlton Cir.                           San Diego, CA  92123
Lake Worth, FL 33467                        (619) 905-9105
(561) 452-7575                              Hawaii Bar No. 9145
Fla. Bar No. 1005581                        alan.alexander.beck@gmail.com
larosieremm@gmail.com

*Attorneys for Plaintiffs*

Pursuant to D.C.COLO.LAttyR 5(a)(3)(C), undersigned counsel certifies that the

undersigned are members in good standing of the bar of this Court.

/s/ Matthew Larosiere                       /s/ Alan Beck
Matthew Larosiere                           Alan Alexander Beck
The Law Office of Matthew                   Law Office of Alan Beck
Larosiere                                   2692 Harcourt Drive
6964 Houlton Cir.                           San Diego, CA  92123
Lake Worth, FL 33467                        (619) 905-9105
(561) 452-7575                              Hawaii Bar No. 9145
Fla. Bar No. 1005581                        alan.alexander.beck@gmail.com
larosieremm@gmail.com

49

# VERIFICATION

I, Gregory Howeth, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on August *10*, 2026

Gregory Howeth

50

# VERIFICATION

I, Zackary Dougherty, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions, including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on August 6, 2026

Zackary Dougherty

51

## VERIFICATION

I, John Commerford, declare as follows:

1. I am the Executive Director of the National Rifle Association – Institute for Legislative Action, a position I have held since 2024. I am authorized to speak and testify on behalf of the National Rifle Association of America ("NRA") as to the matters set forth in this *Verified Complaint for Declaratory and Injunctive Relief.*

2. I have personal knowledge of the NRA, its activities, and its intentions, including those set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning the NRA are true and correct to the best of my personal knowledge.

Executed on August 10, 2026

John Commerford

52