**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:26-cv-03690-DDD-KAS**

GREG HOWETH;
ZACKARY DOUGHERTY;
NATIONAL RIFLE ASSOCIATION OF AMERICA; and
COLORADO STATE SHOOTING ASSOCIATION,

*Plaintiffs*,

v.

CITY AND COUNTY OF DENVER, COLORADO;
AL GARDNER, in his official capacity as Executive Director of Public Safety for the City and County of Denver;
RON THOMAS, in his official capacity as Chief of Police for the City and County of Denver;
MIKO BROWN, in her official capacity as City Attorney for the City and County of Denver;
ELIAS DIGGINS, in his official capacity as Sheriff of Denver;
PHIL WEISER, in his official capacity as Colorado Attorney General; and
STAN HILKEY, in his official capacity as Executive Director of the Colorado Department of Public Safety,

*Defendants*.

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# Table of Contents

**TABLE OF AUTHORITIES** .......... iii

**MOTION FOR PRELIMINARY INJUNCTION** .......... 1

**I. Introduction** .......... 1

**II. Statement of Facts** .......... 2

**III. Standard for Preliminary Injunction** .......... 3

**IV. Plaintiffs Have a Strong Likelihood of Success on the Merits** .......... 4

**A. Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text** .......... 6

**B. No Historical Tradition Can Justify Prohibiting Law-Abiding Citizens from Carrying Firearms** .......... 7

**V. Plaintiffs will suffer irreparable harm** .......... 15

**VI. Granting the PI is in the Public Interest and Serves Equity** .......... 16

**VII. Waiver of Bond is Proper and Appropriate Under These Circumstances** .......... 17

**VIII. This Court Should Consolidate Pursuant to Rule 65(a)(2)** .......... 18

**IX. Conclusion** .......... 20

# TABLE OF AUTHORITIES

**Cases**

*Alfwear, Inc. v. Mast-Jägermeister, Inc.*, No. 2:17-cv-936, 2020 U.S. Dist. LEXIS 186990 (D. Utah Oct. 7, 2020) ....................19

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012)....................17

*Birdt v. San Bernardino Sheriff's Dep't*, No. EDCV 13-0673-VAP (JEM), 2013 U.S. Dist. LEXIS 208714 (C.D. Cal. Sep. 30, 2013) ....................12

*Cal. Rifle & Pistol Ass'n v. L.A. Cty. Sheriff's Dep't*, 745 F. Supp. 3d 1037 (C.D. Cal. 2024) (California law on a preliminary injunction) ....................4, 13

*Carr v. State*, 34 Ark. 448 (1879) ....................10

*Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289 (10th Cir. 1980)....................19

*Commonwealth v. Donnell*, 495 Mass. 471 (2025)....................5, 14

*Commonwealth v. Rodriguez*, 496 Mass. 627 (2025) ....................5

*Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780 (10th Cir. 1964)....................18

*Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461 (10th Cir. 1987)....................18

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................6

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014)....................16

*Ezell v. City of Chi.*, 651 F.3d 684 (7th Cir. 2011) ....................16

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ........................................................3

*Free the Nipple v. City of Fort Collins*, 916 F.3d 792 (10th Cir. 2019)....... 4, 15, 16

*Gholson v. State*, 53 Ala. 519 (1875) ..................................................................11

*Hathcote v. State*, 17 S.W. 721 (Ark. 1891) ..........................................................10

*Higbie v. James*, 795 F. Supp. 3d 307 (N.D.N.Y. 2025) .........................4, 11, 13, 15

*Hoffman v. Bonta*, 789 F. Supp. 3d 995 (S.D. Cal. 2025).........................................4

*McDonald v. City of Chi.*, 561 U.S. 742 (2010) .......................................................16

*McGuirk v. State*, 64 Miss. 209 (1886) ..................................................................11

*Nunn v. State*, 1 Ga. 243, 251 (1846)...............................................................9, 12

*Ortega v. Grisham*, 148 F.4th 1134 (10th Cir. 2025) ..................................... 3, 4, 8

*Osage Nation v. Wind Capital Grp., Ltd. Liab. Co*., No. 11-CV-643-GKF-PJC, 2011 U.S. Dist. LEXIS 135069 (N.D. Okla. Nov. 22, 2011)...............................19

*Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221 (10th Cir. 2005).....................15

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013).............................2, 5, 11, 12

*Smith v. District of Columbia,* 568 F. Supp. 3d 55 (D.D.C. 2021) ..........................14

*Smith v. State*, 50 Tenn. 511 (1872)........................................................................11

*Solinsky v. Lopez*, No. 1:26-cv-00117-JAO-RT (D. Haw. Apr. 15, 2026).................5

*United States v. Hemani*, No. 24-1234, 2026 U.S. LEXIS 2559 (June 18, 2026)........6

*United Utah Party v. Cox*, 268 F. Supp. 3d 1227 (D. Utah 2017) .................. 17, 18

*Winnebago Tribe v. Stovall,* 341 F.3d 1202 (10th Cir. 2003) ................................18

*Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723 (June 25, 2026)............ 6, 7, 8, 9

*Wrenn v. District of Columbia*, 431 U.S. App. D.C. 62 (2017) ...............................14

**Statutes**

1821 Tenn. Pub. Acts 15 ...........................................................................................11

1870 Tenn. Pub. Acts 55 ...........................................................................................11

C.R.S. § 18-12-213 .....................................................................................................5

Colo. Rev. Stat. § 18-12-203 .................................................................................1, 5

Denver Rev. Mun. Code § 38-117 ........................................................................2, 6

**Other Authorities**

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995)........................................................................................................16

Robert Looney Caruthers & Alfred Osborn Pope Nicholson, A COMPILATION OF THE STATUTES OF TENNESSEE (1836) ..................................................11

William H. Bridges, DIGEST OF THE CHARTERS AND ORDINANCES OF THE CITY OF MEMPHIS (1867) ..............................................................11

**Rules**

Fed. R. Civ. P. 65 ........................................................................................... 17, 19

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Greg Howeth, Zackary Dougherty, the National Rifle Association of America ("NRA"), and the Colorado State Shooting Association ("CSSA") move the Court to enter a Preliminary Injunction enjoining Defendants' complete ban on nonresident handgun carry in the City of Denver for Plaintiffs and similarly situated individuals. As grounds for this motion, they state:

## I. Introduction

The individual Plaintiffs are nonresidents of Colorado who wish to carry a handgun—either openly or concealed—for lawful self-defense in Denver. They cannot do so because Colorado law combined with Denver law leave them no mechanism to carry a handgun. Neither Plaintiffs' states of residence offer concealed carry reciprocity with Colorado concealed handgun permit ("CHP") holders. Colorado will not honor the concealed carry permits of states that do not honor Colorado CHPs. And Colorado will not issue CHPs to nonresidents of Colorado. Additionally, Denver prohibits the open carry of handguns. Thus, Plaintiffs have no means to carry a handgun for self-defense anywhere in Denver. "That alleged complete disarmament results from the confluence of two enactments: the state statute that requires CHL applicants to be legal residents of Colorado, Colo. Rev. Stat. § 18-12-203, and the Denver ordinance that requires a CHL for most forms of

open carry, Denver Rev. Mun. Code § 38-117(a), (b), & (f)." *Peterson v. Martinez*, 707 F.3d 1197, 1208 (10th Cir. 2013). A complete ban on handgun carry for nonresidents is plainly unconstitutional. A preliminary injunction should issue.

## II. <u>Statement of Facts</u>

Plaintiff Gregory Howeth is an adult resident of Maui County, Hawaii, a citizen of the United States, and a member of NRA and CSSA. FAC ¶ 3. Plaintiff Zackary Dougherty is an adult resident of Greenville County, South Carolina, a citizen of the United States, and a member of NRA and CSSA. FAC ¶ 4. Both Plaintiff Howeth and Plaintiff Dougherty regularly travel to Denver. FAC ¶¶ 67–68, 101–102. Neither Hawaii nor South Carolina offer reciprocity to Colorado handgun carry permit holders. But for a combination of Denver and Colorado law that completely prohibits nonresidents of Colorado from states that do not grant reciprocity to Colorado handgun carry permit holders, both individual Plaintiffs would carry a handgun either openly or concealed in Denver. FAC ¶¶ 82, 110. The National Rifle Association of America (NRA) is a nonprofit membership organization devoted to protecting the right to keep and bear arms. FAC ¶ 5. NRA and CSSA have members who are nonresidents of Colorado who would carry in Denver if the challenged laws are invalidated—including Howeth and Dougherty. FAC ¶¶ 5–6, 112. Both Howeth and Dougherty have attempted to apply and have

been rejected for Colorado concealed carry permits due to their status as nonresidents. FAC ¶ 62-64, 95-96. Defendants, in conjunction with one another, maintain the combined Colorado and Denver laws that prohibit Plaintiffs from carrying handguns for self-defense. FAC ¶¶ 7–29. Plaintiffs bring this lawsuit to vindicate their Second Amendment right to carry a handgun for lawful self-defense. *See FAC Prayer for Relief Generally.*

## III. Standard for Preliminary Injunction

"Plaintiffs seeking an injunction must establish: (1) a substantial likelihood that they will ultimately succeed on the merits of their suit; (2) that they are likely to suffer irreparable harm without preliminary relief; (3) this threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and, (4) if issued, the injunction will not adversely affect the public interest." *Ortega v. Grisham*, 148 F.4th 1134, 1141-42 (10th Cir. 2025). "When a party seeks an injunction that would change the status quo, rather than to preserve it, it faces a higher burden." *Id. at* 1142. "In seeking such an injunction, the movant must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Fish v. Kobach*, 840 F.3d 710, 725 (10th Cir. 2016). "When a plaintiff is asserting an injury in the form of a violated constitutional right, we presume that the injury will be irreparable if it exists." *Ortega*, 148 F.4th at 1142.

"An 'individual's right to carry a handgun for self-defense outside the home' under the Second Amendment is one such constitutional right." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10 (2022)). "The difficulty in calculating or determining adequate monetary damages for a constitutional injury is so well-settled that 'the principle collapses the first and second preliminary-injunction factors, equating likelihood of success on the merits with a demonstration of irreparable injury.'" *Ortega*, 148 F.4th at 1142 (quoting *Free the Nipple v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019)). "Similarly, the third and fourth factors 'merge' when, as here, the government is the opposing party." *Id.*

## IV. Plaintiffs Have a Strong Likelihood of Success on the Merits

Since the Supreme Court's ruling in *Bruen*, two states have had their bans on nonresidents applying for concealed carry permits struck down. *See Hoffman v. Bonta*, 789 F. Supp. 3d 995, 1004 (S.D. Cal. 2025) (California); *Cal. Rifle & Pistol Ass'n v. L.A. Cty. Sheriff's Dep't*, 745 F. Supp. 3d 1037 (C.D. Cal. 2024) (California law on a preliminary injunction); *Higbie v. James*, 795 F. Supp. 3d 307 (N.D.N.Y. 2025) (New York). Additionally, the Massachusetts Supreme Judicial Court held that a Massachusetts nonresident permit law that predated *Bruen* was unconstitutional because it was based on an impermissible may-issue system. *Commonwealth v.*

*Donnell*, 495 Mass. 471, 481 (2025).[1] And one federal court has issued a stipulated injunction that enjoins Hawaii's nonresident carry ban. *See* Stipulated Final Judgment and Permanent Injunction, *Solinsky v. Lopez*, No. 1:26-cv-00117-JAO-RT (D. Haw. Apr. 15, 2026), ECF No. 19.

Defendants' combined legal regime is one of—if not *the*—last remaining prohibitions on nonresident handgun carry. Colorado does not issue permits to nonresidents. C.R.S. § 18-12-203. "Colorado provides for reciprocity and recognition of CHLs issued by other states, but only for states that provide reciprocity to Colorado CHLs." *Peterson v. Martinez*, 707 F.3d 1197, 1202 (10th Cir. 2013) (citing C.R.S. § 18-12-213(1)). And "reciprocity is offered only with respect to CHLs issued by an individual's state of residence." *Id.* (citing C.R.S. § 18-12-213(1)(b)(I)). Thus, Plaintiffs and all other residents of states that do not offer reciprocity to Colorado CHPs have no mechanism to carry a concealed handgun for self-defense in Denver. And because Denver prohibits the open carrying of

[1] Note, *Donnell* was abrogated on separate grounds. However, it remains good law as to whether nonresidents may be subjected to a may issue system. *See Commonwealth v. Rodriguez*, 496 Mass. 627, 642 n.8, 267 N.E.3d 77, 92 (2025) ("However, our threshold conclusion that the Commonwealth's nonresident firearm licensing scheme was facially unconstitutional did not take into account the provision that "no license shall be issued to a person who" has been convicted of a "felony" or a "violent crime." G. L. c. 140, § 131F (i), as amended through St. 2014, c. 284, §§ 60, 63. To the extent that this omission is called into question by today's opinion, *Donnell* is hereby abrogated.").

handguns, Denver, Colo., Rev. Mun. Code § 38-117(a), (b), & (f), these individuals cannot carry handguns at all. This is plainly unconstitutional.

To analyze a Second Amendment claim, "[f]irst, a court must determine whether the challenged law falls within the plain text of the Amendment's language." *Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723, at *2 (June 25, 2026) "If a challenged law falls within the plain text, it is presumptively unconstitutional." *Id. at* *3. "'To overcome that presumption, the government bears the burden of showing its regulatory efforts are "consistent with the Nation's historical tradition of firearm regulation.'" *United States v. Hemani*, No. 24-1234, 2026 U.S. LEXIS 2559, at *2 (June 18, 2026) (quoting *Bruen*, 597 U. S. at 24)

**A. Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text**

The plain text "inquiry entails three subsidiary questions. First, does the law apply to 'the people'—which is to say, to 'all members of the political community'?" *Wolford*, 2026 WL 1825723, at *6. The laws clearly do, since Plaintiffs are "ordinary, law-abiding, adult citizens." *Bruen*, 597 U.S. at 31. "Second, does it concern any form of 'Arms,' *i.e.*, any weapon customarily used for offensive or defensive purposes?" *Wolford*, 2026 WL 1825723, at *6 (citing *District of Columbia v. Heller*, 554 U.S. 570 at 580 (2008)). The laws do, because the laws concern "handguns," which "fall squarely into this category." *Id.* at *4 (quoting

*Heller*, 554 U.S. at 628). "Third, does the law place any restrictions on either the 'keep[ing]' (*i.e.,* possession) or the 'bear[ing]' (*i.e*., carrying) of arms?" *Wolford*, 2026 WL 1825723, at *6. The laws restrict Plaintiffs' ability to "'bear,' i.e., carry, 'arms.' Therefore, 'the plain text of the Second Amendment protects' what [Plaintiffs] want to do: carry handguns for self-defense." *Wolford*, 2026 WL 1825723, at *9 (quoting *Bruen*, 597 U.S. at 32). The challenged laws are thus unconstitutional unless Defendants "identify historical laws that pursued an analogous goal in an analogous way." *Id.* at *40-41 (Barrett, J., concurring).

### B. No Historical Tradition Can Justify Prohibiting Law-Abiding Citizens from Carrying Firearms

To carry their burden under the historical inquiry, Defendants must provide historical analogues that are "representative" of a robust long-established tradition that existed at the Founding. "*Bruen* identified three important inquiries that courts should undertake in evaluating proffered analogues." *Wolford*, No. 24-1046, at *15 (June 25, 2026). "The first is the number of jurisdictions in which they were adopted." "An outlier legal rule adopted in a few locales is not enough." *Id. at* *29. "The second is the extent to which they were well-accepted. *Id. at* *15. "The third is whether any analogue or collection of analogues is "relevantly similar" to the modern law." *Id.* "Determining whether this condition is met requires consideration of "how" the analogue restricted the keeping or bearing of arms—that is, whether it

imposed a restriction similar to that imposed by the challenged law. And a court must also consider "why" the analogue restricted the keeping or bearing of arms—that is, whether its rationale was similar to that of the new law." *Id.* at *15-16 (citation omitted). Furthermore, the analogues must be of the correct vintage. "On a constitutional scale, even 'innovations of the mid-to late-19th-century come too late to provide insight into the meaning of [the Constitution in 1787].'" *Ortega v. Grisham,* 148 F.4th 1134, 1146 n.6 (10th Cir. 2025) (quoting *Bruen*, 597 U.S. at 36-37). "Laws birthed in the 1920s fall short of that standard by decades." *Id.*

The Supreme Court has already established that the Second Amendment protects the "right of the public to peaceably carry handguns for self-defense," and that any law "prevent[ing] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms" is unconstitutional. *Bruen*, 597 U.S. at 71; *see also Wolford*, 2026 WL 1825723, at *7 (laws that "broadly prohibit[] law-abiding citizens from carrying commonly used firearms in public for self-defense, violate[] the Second and Fourteenth Amendments.") (quoting *Bruen*, 597 U.S. at 38). The individual Plaintiffs and affected NRA and CSSA members are law-abiding citizens and the challenged laws prevent them from carrying firearms in public for self-defense. Therefore, Supreme Court precedent requires that the laws be held unconstitutional.

Defendants will not be able to argue that Plaintiffs' rights disappear in Denver simply because they do not reside in Colorado. The Supreme Court has recently held that "the Second Amendment has the same meaning in all parts of the United States." *Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723, at *11 (U.S. June 25, 2026). Thus, Plaintiffs—who may lawfully carry in their states of residence and many other states and who, apart from Colorado's residency requirement, satisfy Colorado's eligibility requirements for carry permits—have the same right to carry in Denver as they do in all other parts of the United States.

Nor can Defendants claim that Supreme Court precedent should be disregarded because there is a historical tradition of prohibiting nonresidents from carrying. On the contrary, the historical tradition shows that travelers and other nonresidents enjoyed even greater freedom to carry firearms than residents.

Before 1900, carrying a firearm openly generally did not require a permit or any other permission from the government. Concealed carry, on the other hand, was sometimes restricted or banned entirely. Courts generally approved of this arrangement. *See, e.g., Nunn v. State*, 1 Ga. 243, 251 (1846). But there was one frequent exception to carry restrictions: travelers were typically exempted. This tradition began during the colonial era. Plaintiffs have compiled in their complaint a lengthy list of state and territorial laws from the colonial era through the nineteenth

century that all provided that travelers received extra protection when carrying—including when they were traveling in other states. *See FAC ¶¶ 115–36.* Besides state and territorial laws, many local governments also implemented traveler's exceptions. Plaintiffs' complaint details dozens of these laws. See FAC ¶¶ 137–78. This multitude of laws demonstrates an enduring American tradition of affording both resident and nonresident travelers heightened protections for carrying firearms while traveling.

The "how" of these laws was to provide additional firearm carry rights when traveling. The "why" of these laws was to allow travelers to protect themselves from the dangers of the road which typically did not exist when home. *See Carr v. State*, 34 Ark. 448, 449 (1879) ("The exception [for journeys] in [a statute proscribing concealed carry of a pistol] is to enable travelers to protect themselves on the highways, or in transit through populous places."); *Hathcote v. State*, 17 S.W. 721, 722 (Ark. 1891) ("The exception [for journeys] was designed to permit it when necessary to defend against perils of the highway to which strangers are exposed, and that are not supposed to exist among one's own neighbors.").

Travelers included "persons *who are on a journey out of their State* or county."

*See Smith v. State*, 50 Tenn. 511, 511 (1872) (emphasis added).[23] Therefore, there is a historical tradition of protecting the Second Amendment rights of Americans while they are in states where they are nonresidents. Thus, robust national history and tradition speak with a uniform voice: Plaintiffs have a "'general right to publicly carry arms for self-defense' outside the home which, during an individual's daily life, can include crossing state lines." *Higbie v. James*, 795 F. Supp. 3d 307, 342-43 (N.D.N.Y. 2025).

Furthermore, Plaintiffs' challenge is distinguishable from the one at issue in *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013). In *Peterson*, the Plaintiff challenged Colorado's ban on concealed carry permits for nonresidents but waived any challenge to Denver's open carry ban. *Id. at* 1208. "We see no reason that a plaintiff could not challenge both the statute and the ordinance in the same suit, but

[2] *See also* Robert Looney Caruthers & Alfred Osborn Pope Nicholson, A COMPILATION OF THE STATUTES OF TENNESSEE 100 (1836) (1825 carry ban providing "that nothing herein contained shall affect any person that may be on a journey to any place out of his county or state"); *See also* 1821 Tenn. Pub. Acts 15 at 16(…nothing herein contained shall affect . . . any person that may be on a journey to any place out of his county or state."). 1870 Tenn. Pub. Acts 55 (accord); William H. Bridges, DIGEST OF THE CHARTERS AND ORDINANCES OF THE CITY OF MEMPHIS 44 (1867) (accord).

[3] The general definition for a journey was "[t]he traveling or setting out on a journey," intended by the statute to be an excuse for carrying concealed weapons, means a travel of such distance as to take one beyond the circle of his friends and acquaintances." *McGuirk v. State*, 64 Miss. 209, 212, 1 So. 103, 104 (1886); accord *Gholson v. State*, 53 Ala. 519, 520 (1875).

Peterson has made a conscious decision not to challenge the constitutionality of the Denver ordinance. *Peterson v. Martinez*, 707 F.3d 1197, 1208 (10th Cir. 2013). "Accordingly, we must conduct our two-step Second Amendment analysis based on the effects of the state statute rather than the combined effects of the statute and the ordinance." *Id.* In doing so the Tenth Circuit held "the Second Amendment does not confer a right to carry concealed weapons" after conducting a historical survey it believed demonstrated concealed carry was historically outside the scope of the Second Amendment right. *Id. at* 1211.[4] Here, Plaintiffs' claims are distinguishable. They are expressly challenging the "combined effects of the [Colorado] statute and the [Denver] ordinance." *Id. at* 1208. The individual Plaintiffs and affected NRA and CSSA members wish to carry a handgun in some manner—either openly or concealed—for self-defense. FAC ¶¶ 82, 110, 112. The combined effects of Colorado and Denver law prohibit them from carrying in either manner. *Bruen* is clear that the constitutional right to bear arms cannot be extinguished. And this applies to Americans while traveling in other states.

[4] A California case similarly distinguished *Peterson*. "Colorado law 'does not affect the ability of non-residents to openly carry firearms in the state[.]' Thus, just like in *Chandler* and *Nunn*, but unlike California, there is a ready alternative available to the affected individuals—the ability to carry weapons openly if they cannot obtain a concealed weapon's permit." *See Birdt v. San Bernardino Sheriff's Dep't*, No. EDCV 13-0673-VAP (JEM), 2013 U.S. Dist. LEXIS 208714, at *14-15 (C.D. Cal. Sep. 30, 2013) (quoting *Peterson*, 707 F.3d at 1209-1212).

Denver will not be able to "present[] any reason why Plaintiffs' constitutional right to keep and bear arms should stop at the State line." *Higbie,* 795 F. Supp. 3d at 343. Despite it being Defendants' burden, Plaintiffs have shown an enduring history of nonresidents having the right to carry arms while traveling. In the California nonresident litigation, California was unable to point to "any similar laws [to California's nonresident ban] before either the Founding or Reconstruction." *Cal. Rifle & Pistol Ass'n v. L.A. Cty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1066 (C.D. Cal. 2024). That is because, as far as Plaintiffs are aware, there are none. In fact, in *Higbie*, "Defendant James [the State of New York] admit[ted] that '[s]tate licensing laws such as the one Plaintiffs are challenging did not emerge until the early 20th Century.'" *Higbie,* 795 F. Supp. 3d at 338. And whatever 20th century laws Defendants might muster are far too late in time. *See Bruen*, 597 U.S. at 66 n.28 ("We will not address any of the 20th-century historical evidence brought to bear by respondents [because] the 20th-century evidence presented by respondents . . . does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence."). "In this case, there is a lack of historical tradition to support the notion that states can exclude out-of-state applicants." *Higbie,* 795 F. Supp. 3d at 340.

Also, in striking down Massachusetts's may-issue permit system for

nonresidents, the Massachusetts Supreme Judicial Court rejected the State's argument that "[t]he nation's historical tradition of firearm regulation … includes restrictions against nonresidents." *Commonwealth v. Donnell*, 495 Mass. at 480. "While we acknowledge the relevance of those historical regulations to the aspects of the Commonwealth's nonresident firearm licensing scheme that define 'prohibited persons,' they do not justify the discretion conferred on the State police colonel or his designee to deny a license to an otherwise qualified, law-abiding citizen." *Id.*

Further support is found in *Smith v. District of Columbia,* 568 F. Supp. 3d 55 (D.D.C. 2021). There, Plaintiffs were "four non-residents and two residents of the District of Columbia who, over the course of time between May 15, 2012, and October 10, 2014, were arrested by the Metropolitan Police Department ('MPD') on gun-related charges." *Id. at* 58-59. "The same set of laws barred non-residents from obtaining a gun registration, and then permitted the arrest of non-residents for carrying weapons or ammunition without a license." *Id.* at 63-64. "These laws go to the core of the Second Amendment, which preserves the 'right of responsible citizens to carry firearms for personal self-defense beyond the home, subject to longstanding restrictions.'" *Id. at* 64 (quoting *Wrenn v. District of Columbia*, 431 U.S. App. D.C. 62, 864 F.3d 650, 667 (2017)). "Construing the facts most favorably

to the defendants, the District violated the plaintiffs' Second Amendment rights by arresting them, detaining them, prosecuting them, and seizing their guns based on an unconstitutional set of D.C. laws." *Id.* at 64. Thus, the D.C. district court made an express finding that nonresidents retain Second Amendment rights when they travel and that a complete ban on their carry rights violates the Second Amendment. Defendants' complete ban on the individual Plaintiffs' and affected members' carry rights likewise violates the Second Amendment. Plaintiffs are likely to succeed on the merits of their claim.

## V. **Plaintiffs will suffer irreparable harm**

Plaintiffs suffer irreparable harm every day they cannot exercise their constitutional right to bear arms in Denver. "[A]ny infringement of one's constitutional rights inflicts an irreparable injury." *Free the Nipple - Fort Collins v. City of Fort Collins*, 237 F. Supp. 3d 1126, 1134 (D. Colo. 2017); *see also Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005) ("We therefore assume that plaintiffs have suffered irreparable injury when a government deprives plaintiffs of their commercial speech rights."). Indeed, "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019); *see also* 11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2948,

2948.2 & n.10 (3d ed. & Nov. 2018 update) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). "This analysis does not change where the constitutional violation at issue is a Second Amendment violation because the right to peaceably bear arms to defend oneself is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023) (quoting *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010)); *see also Ezell v. City of Chi.,* 651 F.3d 684, 700 (7th Cir. 2011) (describing a deprivation of the right to arms as "irreparable and having no adequate remedy at law."). Because Plaintiffs can demonstrate an ongoing violation of their constitutional rights, they are suffering irreparable harm.

## VI. <u>Granting the PI is in the Public Interest and Serves Equity</u>

The last two preliminary injunction elements merge when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). "The third preliminary-injunction factor involves balancing the irreparable harms identified above against the harm that the preliminary injunction causes the City." *Free the Nipple-Fort Collins*, 916 F.3d at 806. "Under the heightened disfavored-injunction standard, the Plaintiffs need to make a strong showing that the balance of harms tips in their favor." *Id.* "When a constitutional right hangs in the

balance, though, 'even a temporary loss' usually trumps any harm to the defendant." *Id.* "The last preliminary-injunction factor requires that the injunction not be against the public interest." *Id. at* 807. However, "it's 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Id* (quoting *Free the Nipple - Fort Collins,* 237 F. Supp. 3d at 1134); see also *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) ("[W]hen the law that voters wish to enact is likely unconstitutional, their interests do not outweigh Mr. Awad's in having his constitutional rights protected.").

Here, Plaintiffs have established a violation of their constitutional right to bear arms. When a constitutional right is being violated, it is always in the public interest and serves equity to grant a preliminary injunction. As a practical matter, there is no indication that the individual Plaintiffs or affected NRA and CSSA members would not carry in a safe manner just as many Colorado residents do in Denver every day. A preliminary injunction should issue.

## VII. <u>Waiver of Bond is Proper and Appropriate Under These Circumstances</u>

"Under Federal Rule of Civil Procedure 65(c), '[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *United Utah Party v. Cox*, 268 F. Supp. 3d 1227, 1260 (D. Utah 2017). "Despite the mandatory nature of the language

in the Rule, trial courts have 'wide discretion under Rule 65(c) in determining whether to require security.'" *Id.* "This preliminary injunction enforces fundamental constitutional rights against the government. Waiving the security requirement best accomplishes the purposes of Rule 65(c)." *Id.* "Under this rule the trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Cont'l Oil Co. v. Frontier Ref. Co*., 338 F.2d 780, 782 (10th Cir. 1964); *see also Winnebago Tribe v. Stovall,* 341 F.3d 1202, 1206 (10th Cir. 2003) (quoting *Coquina Oil Corp. v. Transwestern Pipeline Co*., 825 F.2d 1461, 1462 (10th Cir. 1987) (The district court here considered the possibility of a bond, made specific findings of fact, and concluded there was 'an absence of proof showing a likelihood of harm.'… We find no abuse of discretion in the district court's treatment of this issue."). Here, a constitutional right is at issue. No harm will occur if a bond is not required. Furthermore, the Defendants are all part of two large government entities that will not be harmed by a lack of a bond. Therefore, this Court should use its discretion to find no bond is required.

## VIII. <u>This Court Should Consolidate Pursuant to Rule 65(a)(2)</u>

Federal Rule of Civil Procedure 65(a)(2) permits a court to consolidate a preliminary injunction hearing with a trial on the merits "before or after the

commencement of the hearing of an application for a preliminary injunction." Fed. R. Civ. P. 65(a)(2). The decision to consolidate a preliminary injunction with trial is within the district court's discretion. *Alfwear, Inc. v. Mast-Jägermeister, Inc.*, No. 2:17-cv-936, 2020 U.S. Dist. LEXIS 186990, at *3-4 (D. Utah Oct. 7, 2020). "Such consolidation may obviously avoid having the same evidence presented both at the preliminary injunction stage and later at trial at the permanent injunction stage. Thus, such a consolidation generally saves considerable time at trial by eliminating unnecessary evidentiary redundancy." *Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980). "Consolidation is warranted, for example, 1) when the relief demanded by the complaint is the identical relief requested by the application for a preliminary injunction; 2) where the factual issues raised by the complaint are not only few and simple but identical with those which would be presented upon the trial; and 3) where consolidation would save the court and the parties a duplicative second trial without prejudicing the rights of the parties." *Osage Nation v. Wind Capital Grp., Ltd. Liab. Co.*, No. 11-CV-643-GKF-PJC, 2011 U.S. Dist. LEXIS 135069, at *2 (N.D. Okla. Nov. 22, 2011).

Here, the facts at issue here are simple and will be the same at trial. On a fundamental level, the individual Plaintiffs and affected NRA and CSSA members are nonresidents of Colorado who wish to carry a firearm to defend themselves while

in Denver. This case will be primarily decided by historical laws. As such, consolidation saves the time of both the parties and the Court. Therefore, consolidation is warranted.

## IX. Conclusion

The Supreme Court has held that law-abiding citizens cannot be prohibited from carrying firearms for self-defense. Moreover, our Nation's history reveals a strong and enduring national tradition of nonresidents being able to carry handguns for self-defense while traveling. Defendants' prohibition on handgun carry for certain nonresidents is an extreme outlier, both historically and today. This Court should join the other courts that have considered such challenges and struck down similar prohibitions. Plaintiffs also satisfy the other preliminary injunction factors. A preliminary injunction should be issued.

DATED: September 4, 2026.

Respectfully submitted,

*/s/ Matthew Larosiere*
Matthew Larosiere
The Law Office of Matthew Larosiere
6964 Houlton Cir.
Lake Worth, FL 33467
(561) 452-7575
Larosieremm@gmail.com

/s/ *Alan Beck*
Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Alan.alexander.beck@gmail.com

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing paper complies with the length limitation set forth in DDD Civ. P.S. III(A)(2).

*/s/ Matthew Larosiere*
Matthew Larosiere
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which served all counsel of record. I further certify that on the same date, I served a copy by email and USPS Priority Mail on Assistant Attorney General Emily Buckley, counsel for Defendants Phil Weiser and Stan Hilkey, who has not yet entered an appearance.

*/s/ Matthew Larosiere*
Matthew Larosiere
*Counsel for Plaintiffs*

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel certifies that on August 12 and 13, 2026, he conferred by email and by telephone with defense counsel regarding the relief requested in this motion. Assistant Attorney General Emily Buckley, who represents Defendants Phil Weiser and Stan Hilkey but has not yet entered an appearance, was notified of the relief requested and advised that those Defendants oppose the motion. Counsel for the Denver Defendants, all of whom have appeared, advised that the Denver Defendants oppose the motion. The parties were unable to resolve or narrow the dispute.

*/s/ Matthew Larosiere*
Matthew Larosiere
*Counsel for Plaintiffs*