**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-03690-DDD-KAS

GREG HOWETH, et al.,
Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO, et al.,
Defendants.

---

**DEFENDANTS PHILIP WEISER AND STAN HILKEY'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

---

## INTRODUCTION

Plaintiffs' motion for preliminary injunction ("Mot.") (Dkt. 19) does not come close to establishing their right to the "extraordinary" remedy of an injunction pending litigation. Plaintiffs do not even satisfy the basic Rule 65 requirement to state with *specificity* the relief they want. Instead, Plaintiffs ask this Court to "str[i]ke down" an unidentified subset of three public-carry handgun laws enacted by the State of Colorado and the City of Denver. *See* Mot. 1, 20. Plaintiffs never identify which specific statute they want to enjoin; they do not explain what *precise* injunction they seek; they do not articulate which of the Defendants (six state and city officials with very different duties) they want relief against; and their insistence that the Motion is brought on behalf of Plaintiffs and "similarly situated individuals" is unsupported by any evidence regarding alleged injuries to non-parties. Mot. 1. Plaintiffs' vague pleadings do not provide the basic notice that Rule 65 requires, and this Court should summarily deny the Motion.

The Motion also fails to satisfy the equitable factors required to establish a right to injunctive relief. The Motion does not attach any evidence, declarations, or exhibits of any kind, instead relying exclusively on their conclusory First Amended Complaint ("FAC") (Dkt. 12) and its four attachments to support their allegation that Plaintiffs' alleged "irreparable" injury is the inability to carry a handgun in the City of Denver. But on this record, Plaintiffs' evidence of a past injury is limited to a single receipt from a McDonald's restaurant near Denver International Airport ("DIA") from over five months ago, FAC ¶ 70, while their only assertion of future injury is the vague allegation that the individual Plaintiffs intend to visit Denver at some point in the future to run "errands" or see friends, FAC ¶¶ 68, 102. Plaintiffs have offered *no* evidence to

suggest any *imminent* irreparable harm that requires this Court's intervention before a final judgment.

Nor have Plaintiffs offered any justification for their delay in bringing this suit, which is yet another basis to deny their Motion. By Plaintiffs' admission, the State and City laws at issue have been on the books for at least 24 years, FAC ¶ 46, and one Plaintiff was subject to those laws for at least a year before filing suit (the other Plaintiff does not provide facts to calculate how long he has been a non-resident visiting Colorado), FAC ¶¶ 65, 97. Plaintiffs' unilateral delay undermines the request for emergency relief.

The public interest and balance of the equities also weigh heavily against injunctive relief. Plaintiffs do not ask this Court to invalidate the State's handgun licensure requirements entirely, so the *maximum* relief they could obtain would be an order requiring the acceptance of permit applications. But because that relief would require the development of a new application system for all 64 of Colorado's county sheriffs, it would burden State employees and cause public confusion. And of course, those new systems would all be unnecessary if Plaintiffs' claims were to ultimately fail on the merits after a final judgment.

Plaintiffs' "merits" argument rests on the false premise that "Defendants" enforce a "complete ban on nonresident handgun carry in the City of Denver." Mot. 1. In reality, Colorado law does not restrict the public and open carry of handguns by residents or non-residents. Colo. Rev. Stat. ("C.R.S.") § 18-12-105. In addition, the Motion completely ignores provisions of Denver law that allow open and concealed carry, including when acting "with valid authorization from the city." Denver Rev. Mun. Code ("Denver Code") § 38-118(c)(3). Plaintiffs necessarily

cannot meet their burden of showing a likelihood of success on the merits when they fail to even cite—much less engage with—the applicable statutory provisions.

Finally, Plaintiffs' suit against the State Defendants is barred under the Eleventh Amendment because the State Defendants do not enforce the laws that Plaintiffs challenge, as the Tenth Circuit has already held expressly with respect to the executive director of the Department of Public Safety. *Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir. 2013).

## BACKGROUND

### I. Colorado's permissive public-carry laws.

Colorado allows the open carry of firearms without a license. C.R.S. § 18-12-105. Consistent with longstanding precedent, however, the State regulates the concealed carry of firearms. *Id.*; *see Peterson*, 707 F.3d at 1209 (rejecting challenge to Colorado's concealed carry laws). Thus, it is a crime for a person to carry a concealed firearm unless they meet one of the statutory exceptions for individuals who (1) are "in a private automobile or other private means of conveyance who carries a weapon for lawful protection of such person's or another's person or property while traveling"; or (2) who "at the time of carrying a concealed weapon, held a valid written permit to carry a concealed weapon." *Id.* § 18-12-105(2).

Colorado also has a "shall issue" concealed carry permitting regime. *Id.* § 18-12-203(1). To obtain a concealed carry permit, an individual must (1) be at least 21 years old; (2) be a legal resident of Colorado; (3) demonstrate competence with a handgun by submitting evidence, which can include a "training certificate from a concealed handgun training class obtained within the one year preceding submittal of the application"; and (4) not have committed any

disqualifying act (*i.e.*, been convicted of perjury or have had a civil protection order entered against them). *Id.*

For non-residents, Colorado has a reciprocity regime, through which non-residents can obtain a concealed carry permit if they are 21 or older, their home state recognizes Colorado's concealed carry permits, and they are either a resident of that state or a resident of Colorado for no more than 90 days. *Id.* § 18-12-213(1).

## II. Denver's public-carry prohibitions and exceptions.

Denver generally prohibits both concealed and open carry of firearms, Denver Code §§ 38-118(a), (b), but that prohibition contains five exceptions, including (as relevant here), for individuals (1) "acting with valid authorization from the city" or (2) who are "[t]ransporting the weapon while travelling within a private automobile," *id.* § 38-118(c). In addition, Denver expressly allows individuals to carry concealed firearms if they have a "valid permit." *Id.* § 38-118(d).

## III. Procedural history.

### A. Summary of FAC.

Plaintiffs are two individuals and two organizations. Gregory Howeth is a Hawaii resident who has a concealed-handgun permit in Hawaii. FAC ¶¶ 49-50. Mr. Howeth alleges that he owns a second home in Weld County, but he does not allege when he purchased that home. *Id.* ¶ 65. He alleges that he "routinely travels to Denver because he flies into [DIA]." *Id.* ¶ 67. He also alleges that he "will routinely stay in Denver to eat, shop, run errands, and engage in other activity after or before a flight." *Id.* ¶ 68. The only specific example that Mr. Howeth cites is a single meal at a McDonald's near DIA in May 2026. *Id.* ¶ 70; *see* Dkt. 12-3. Mr. Howeth asserts

that he has completed a firearm training course and that his application for a concealed carry permit to the Weld County Sherrif's Office was denied because he is a non-resident. FAC ¶¶ 61-64. The FAC does not name the Weld County Sherriff as a defendant.

Mr. Dougherty is a resident of South Carolina and carries a firearm when he is in South Carolina. *Id.* ¶¶ 86, 104. He alleges that he was a resident of Loveland, Colorado, until August 2025. *Id.* ¶ 97. Like Mr. Howeth, Mr. Dougherty alleges that he routinely flies into DIA and will continue to do so in the future. *Id.* ¶ 101. And like Mr. Howeth, Mr. Dougherty does not identify any trip to Denver that he intends to make before this case reaches final judgment.

The FAC alleges that Mr. Howeth and Mr. Dougherty are members of the National Rifle Association ("NRA") and Colorado State Shooting Association ("CSSA"). *Id.* ¶¶ 59, 94. The FAC contains a single paragraph alleging what each organization does, *Id.* ¶¶ 5-6, but it provides no other information about the organizations or their members. The FAC does not allege any independent injury to the organizations.

### B. Summary of Motion.

Plaintiffs' Motion asks this Court to enjoin "Defendants' complete ban on nonresident handgun carry in the City of Denver for Plaintiffs and similarly situated individuals." Mot. 1. The FAC does not identify a putative class. *See id.* Similarly, while the FAC names four Denver Defendants and two State Defendants (all in their official capacities), FAC ¶¶ 7-29, the Motion does not mention a single defendant by name. *See, e.g.*, Mot. 1, 3, 5.

The Motion asserts that the combination of the State and City firearm laws operate as a "complete ban" on handgun carry for nonresident visitors in Denver. *See id.* 1-2, 15. In making that argument, the Motion does not address any of the exceptions in City laws that allow

handgun carry without a license. *See* Denver Code §§ 38-118(c)(3), (5). From the premise that handgun-carry is completely banned, Plaintiffs argue that they have shown a likelihood of success on the merits on their Second Amendment claim. Mot. 4-15.

Plaintiffs assert that they satisfy the remaining preliminary injunction factors based on their merits argument, without any additional factual analysis. They claim: "Because Plaintiffs can demonstrate an ongoing violation of their constitutional rights, they are suffering irreparable harm." *Id*. 16. They then argue: "Plaintiffs have established a violation of their constitutional right to bear arms. When a constitutional right is being violated, it is always in the public interest and serves equity to grant a preliminary injunction." *Id*. 17.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary" remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). A party requesting a preliminary injunction must clearly establish that:

> (1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

*Id.* (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (alterations in original)); *see Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The burden is on the movant to establish his right to the relief requested, and that burden is even heavier when, as here, Plaintiffs seek an injunction that (1) alters the status quo and (2) constitutes a "mandatory" as opposed to prohibitory injunction. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).

## ARGUMENT

### I. This Court should summarily deny Plaintiffs' Motion under Rule 65.

Plaintiffs do not describe any injunction they seek, much less articulate the terms of that injunction with the specificity that Rule 65(d) requires.

Rule 65(d) requires that any order granting a preliminary injunction "must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." As the Tenth Circuit has explained, "the specificity provisions of Rule 65(d) are no mere technical requirements." *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1243 (10th Cir. 2001). Rather, the Rule exists to "prevent uncertainty and confusion on the part of those faced with injunctive orders," *id.*, and to "aid the appellate court in defining the bounds of the injunctive relief," *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 371 (10th Cir. 1996). Accordingly, an injunction that fails to meet Rule 65(d)'s specificity standard is invalid as a matter of law. *Prairie Band*, 253 F.3d at 1243; *Smith v. Crockett*, No. 20-cv-00841-WJM-MEH, 2022 WL 3225119, at *3 (D. Colo. Aug. 10, 2022) ("Because Plaintiff's request would lead to a vague injunction that would not meet the requirements of Rule 65, Plaintiff's Motion should be denied."), *R&R adopted*, 2022 WL 20527332 (D. Colo. Dec. 7, 2022).

The Motion's vague request for relief makes no real effort to comply with Rule 65(d). Plaintiffs ask this Court to enjoin "Defendants' complete ban on nonresident handgun carry in the City of Denver." Mot. 1. And they later invite this Court to join other courts that have purportedly "struck down similar prohibitions." Mot. 20. But of course, federal "courts do not have the power to 'excise' or 'strike down' statutes." *See, e.g.*, *Murphy v. NCAA*, 584 U.S. 453,

489 (2018) (Thomas, J., concurring). Moreover, the Supreme Court has made clear that the equitable power of federal courts does permit them to issue "universal injunctions" that apply to non-parties. *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025). On its face, Plaintiffs' request that this Court universally "strike down" state and city laws plainly exceeds the permissible scope of Rule 65 and this Court's equitable authority.

Plaintiffs' failure to comply with Rule 65 renders their Motion impossibly vague. *See Prairie Band*, 253 F.3d at 1243. For instance, Plaintiffs name four City Defendants and two State Defendants, all of whom have different official positions and different statutory duties. FAC ¶¶ 7-29. Nonetheless, the Motion fails to distinguish between the Defendants in any respect. Nor does the Complaint identify which laws it challenges, instead attacking the "combined effect" of three separate statutes (C.R.S. § 18-12-203, *id.* § 18-12-213, and Denver Code §§ 38-117(a), (b), and (f)), without identifying which provisions it wants this Court to "enjoin." As a result, any injunction against "Defendants" would not provide the fair notice that Rule 65(d) requires. *See Prairie Band*, 253 F.3d at 1243.

Plaintiffs' vague request also presents a mismatch with the substance of their claims. For instance, Plaintiffs purport to bring a "facial" challenge[1] to the laws, FAC ¶ 2, yet they appear to

[1] Plaintiffs' request for "facial" relief is nonsensical. "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). Plaintiffs make no attempt to establish that the laws they challenge are unconstitutional in all applications, but only as applied to individuals in Plaintiffs' highly specific circumstances, *i.e.*, non-Coloradans who reside in states that lack reciprocity with Colorado, but who nevertheless occasionally visit Colorado and wish to carry firearms in Denver, and who have taken the requisite training. To prevail in a facial Second Amendment challenge, "the Government need only demonstrate that [the challenged statute] is constitutional in some of its applications." *United States v. Rahimi*, 602 U.S. 680, 693 (2024). Here, Plaintiffs do not contest that the laws they challenge are constitutional as applied to Colorado residents or non-residents from states with reciprocity.

acknowledge that any applicant would need to satisfy training requirements before applying, *id.* ¶¶ 60-61, and they do not allege that all "similarly situated" non-residents have done so. Likewise, Plaintiffs do not challenge the State's permitting regime on its own. *See, e.g.*, *id.* ¶ 73. Instead, their challenge rests on the alleged inability of two individuals to *apply* for a permit to publicly carry their handguns *in Denver*. *Id.* ¶¶ 62-64, 95. Yet Plaintiffs provide no suggestion as to how that relief should be crafted, much less by whom it should be granted.

Plaintiffs' failure to satisfy Rule 65 is a threshold basis to deny their Motion.

## II. Consolidation is inappropriate under Rule 65(a)(2).

Plaintiffs' conclusory request for "consolidation" under Rule 65(a)(2) seeks to shortcut the Rules of Civil Procedure without doing the work necessary to prevail in civil litigation. Their claim that the "facts at issue here are simple" ignores that they have made no attempt to establish *any* necessary facts with evidence or declarations attached to their Motion, and no discovery has occurred. Mot. 19. Plaintiffs have not even articulated a coherent request for relief. *Supra* § I.

Fact development will be necessary before reaching a final trial on the merits, including regarding: (1) Plaintiffs' unilateral delay in bringing suit; (2) the nature of Plaintiffs' alleged injury and requested relief; (4) the scope of Denver's exceptions for unlicensed handgun carry in Denver, *see* Denver Code §§ 38-118(c)(3) and (c)(5), which the Motion ignores; (4) expert testimony on historical firearm regulations; and (5) the respective legal duties of the individual Defendants. The jurisdictional facts alone, all of which Plaintiffs bear the burden of proving (including pertinent to Article III standing), forbid entry of a preliminary injunction absent factual development. *See Citizens Concerned for Separation of Church & State v. City & Cnty.*

*of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980) (vacating injunction following stipulated Rule 65 consolidation "in light of the absence of any evidence of standing").

The State Defendants agree that holding redundant evidentiary hearings in this case is unnecessary. Pursuant to Rule 65(a)(2), any facts ultimately received into evidence on Plaintiffs' Motion (from what little they have adduced) "need not be repeated at trial." *Id.* But consolidating at this early stage whatsoever would obviously prejudice Defendants' ability to fully present their case, including by exploring Plaintiffs' unsupported allegations through discovery. *Holly Sugar Corp. v. Goshen Cnty. Co-op Beet Growers Ass'n,* 725 F.2d 564, 568 (10th Cir. 1984) (consolidation may not be ordered unless it affords the parties "a full opportunity to present their evidence"). Plaintiffs' request for consolidation should be denied.

## III. The equities require denial of Plaintiffs' Motion.

Plaintiffs ask this Court to dispense with three-quarters of the *Winter* test, asserting that they need not make any independent showing of irreparable harm, the public interest, or the balance of the equities. *See* Mot. 16-17. Plaintiffs are mistaken. *Winter* requires this Court to analyze all four factors, and the failure to satisfy any equitable factor warrants denial of their Motion. *See Uber Techs., Inc. v. Moss*, No. 1:25-cv-00096-DDD-KAS, 2025 WL 1420940, at *2 (D. Colo. Jan. 31, 2025) (denying preliminary injunction based on equitable arguments and plaintiff's evidentiary burden without resolving merits of First Amendment claim).

### A. Plaintiffs have not established irreparable harm.

"To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman*, 348 F.3d at 1189 (citation omitted). In other words, "the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a

clear and present need for equitable relief to prevent irreparable harm." *Id.* (citation, emphasis omitted).

To be sure, courts have recognized that the existence of a likely constitutional injury can create a presumption that the injury is irreparable. *See Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019); *Ortega v. Lujan Grisham*, 148 F.4th 1134, 1142 (10th Cir. 2025) (acknowledging "presumption" of irreparable harm for constitutional claim). But the mere existence of a constitutional claim does not, on its own, obviate the irreparable harm inquiry. *See Heideman*, 348 F.3d at 1190 (finding loss of First Amendment freedoms irreparable but holding it is "necessary, however, to consider the *specific* character of the First Amendment claim" (emphasis added)). Even where alleged constitutional harm is present, the Court must examine the specific facts of Plaintiffs' claim and weigh the scope of allegedly "irreparable" harm alongside other equitable factors. *See id.*

First, Plaintiffs have not shown a "clear and present need" for emergency relief based on an "imminent" injury. *Id.* at 1189. The individual plaintiffs argue that they "regularly travel to Denver," Mot. 2, but the only record evidence of any visit to Denver is Mr. Howeth's May 28, 2026 receipt from a McDonald's near DIA, *see* Dkt. 12-3. Plaintiffs provide no detail on when they next expect to visit Denver, and there is no evidentiary indication that they expect to do so before this case reaches summary judgment. Moreover, for the organizational Plaintiffs, the Motion provides no independent basis whatsoever to find harm, much less irreparable harm.

Nor are there any specific allegations as to what activities Plaintiffs want to undertake in Denver. The Motion relies on the vague allegation that Plaintiffs want to run "errands" or visit friends before or after their (unidentified) flights. *See* FAC ¶¶ 67, 68, 101, 102. In this respect, it

is unclear whether Plaintiffs will even be prohibited from carrying their firearms on their future outings, as Denver expressly allows unlicensed carry under certain circumstances, including while traveling by car, and where otherwise "authorize[d]" by Denver. *See* Denver Code §§ 38-118(c)(3), (5). Because Plaintiffs fail to address those exceptions at all, there is no basis to conclude Plaintiffs will be imminently injured—much less irreparably injured.

Second, the doctrine of laches undermines any claim of irreparable harm.[2] "Laches is an equitable doctrine that 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Archer*, 638 F. Supp. 3d at 1256 (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)); *see also Uber Techs.*, 2025 WL 1420940, at *3 (Plaintiff's delay weighed against injunction). Mr. Dougherty alleges that he moved away from Colorado in August of 2025, FAC ¶ 97, yet he did not file this suit until a year later. He offers no explanation for the delay. Similarly, Mr. Howeth alleges that he owns a second home in Weld County, but he does not reveal when he purchased that home, or how long it took him to file this suit after he bought it. *Id.* ¶ 65. Moreover, both plaintiffs allege that they were denied permits in April and May of this year, *id.* ¶¶ 64, 95-96, yet neither of them explain why it took them approximately three months after that alleged denial to file suit. Plaintiffs' failure to provide any evidence in support of their Motion deprives Defendants (and this Court) of sufficient information to evaluate their claims. *See Uber Techs.*, 2025 WL 1420940, at *2.

---

[2] Some courts address laches in discussing Plaintiffs' likelihood of success on the merits, while others evaluate laches under *Winter*'s equitable factors. *See Archer v. Griswold*, 638 F. Supp. 3d 1246, 1256 (D. Colo. 2022); *see also Uber Techs., Inc.*, 2025 WL 1420940, at *2. Regardless of where laches fits into the analysis, it should defeat Plaintiffs' Motion.

Third, the laws at issue have been in effect since at least 2002 by Plaintiffs' own admission. *See* FAC ¶ 46. Plaintiffs thus seek a disfavored disruption of the longstanding status quo, further increasing their burden. *See O Centro Espirita*, 389 F.3d at 975.

In short, this case does not present an emergency. Plaintiffs have provided no reason to dispense with the ordinary procedure for civil litigation and grant the "extraordinary" relief that they request. *Heideman*, 348 F.3d at 1188.

**B. Plaintiffs have not shown that the public interest and balance of the equities support an injunction against State Defendants.**

Plaintiffs' unwillingness (or inability) to articulate a coherent theory of remedy hinders the analysis *Winter* and *CASA* require. *See Ortega*, 148 F.4th at 1155-56 (remanding for district court to address remedy after *CASA*). Three additional points underscore Plaintiffs' failure to meet their burden on the equities. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (balance of the equities and public interest factors "merge when the Government is the opposing party").

First, Plaintiffs make no effort to address the state-funded administrative burden that their requested mandatory injunction would require. *See O Centro Espirita*, 389 F.3d at 975. Plaintiffs apparently ask this Court to require Defendants to stand up brand-new permitting regimes on a temporary basis. If Plaintiffs indeed make that request, the time, effort, and funds required to comply would be significant. *See Peterson*, 707 F.3d at 1204 (crediting burdens on state regarding investigation of non-resident applications for concealed carry). Those burdens would increase exponentially if Plaintiffs maintain their request for an injunction that applies to all "similarly situated" individuals. *But see CASA*, 606 U.S. at 837.

Second, the public has an undisputed interest in ensuring that handgun licensing regimes serve their intended purposes of preventing certain citizens from possessing firearms, *see Rocky*

*Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024), and those licensing regimes are more difficult to implement for non-residents, *Peterson*, 707 F.3d at 1204. While Plaintiffs allege that they are law-abiding citizens, FAC ¶ 192, their lack of evidence does nothing to prove that allegation. Neither Plaintiff has offered a declaration, and only one of the two named Plaintiffs has submitted evidence that he completed the required handgun safety course under Colorado law. *Id.* ¶ 60, Dkt. 12-1. At minimum, any plaintiff seeking to obtain a concealed-carry permit would need to comply with the unchallenged requirements of Defendants' respective licensing regimes.

Third, to the extent Plaintiffs attack Colorado's reciprocity regime specifically, any injunction against that regime would undermine important state interests. The State's regime applies pressure on other states to recognize Colorado's permits in exchange for reciprocity. *See, e.g.*, C.R.S. § 18-12-213(1). Without any reciprocity restrictions, all non-residents would be able to apply for concealed-carry permits in Colorado, but the same privilege would not extend to Colorado residents visiting those other states. *See id.* Thus, other states would no longer have any reason to recognize Colorado's permits. Such a result would undermine the State's interest in encouraging other states to recognize its citizens' concealed-carry permits.

## IV. Plaintiffs have not met their heavy burden of demonstrating a likelihood of success on the merits.

Irrespective of the Motion's many other dispositive flaws, Plaintiffs cannot demonstrate a substantial likelihood of success on the merits on their claims against the State Defendants.

### A. Plaintiffs cannot establish a Second Amendment violation based on State law.

Although Plaintiffs purport to challenge the "combined" effects of state and local law, they fail to identify any unconstitutional aspect of the State's firearms laws. Mot. 6. Colorado

law does not restrict open carry of firearms, Colorado's shall-issue permitting scheme and reciprocity schemes are constitutional under *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), and Plaintiffs have no Second Amendment right to concealed carry of firearms. Plaintiffs do not clearly—and could not plausibly—dispute these conclusions. Their alleged inability to carry a firearm in Denver, therefore, is a matter of local government law, and Plaintiffs cannot demonstrate entitlement to emergency injunctive relief with respect to any provision of state law.

Colorado residents and non-residents have multiple mechanisms by which to exercise their right to publicly carry firearms under State law. First, State law does not prohibit the open carry of firearms. *See* C.R.S. § 29-11.7-104. Accordingly, residents and non-residents alike—including Plaintiffs—have a means of exercising their right to publicly carry firearms anywhere in Colorado[3] as a matter of State law. *Id.*

Second, Colorado law also allows permitted, concealed carry. *See id.* § 18-12-214 ("A permit to carry a concealed handgun authorizes the permittee to carry a concealed handgun in all areas of the state."). Plaintiffs do not, and could not, contest that Colorado's permitting regime operates as a "shall-issue licensing regime" of the kind deemed presumptively lawful in *Bruen*. 597 U.S. at 38 n.9; *see* C.R.S. § 18-12-203(1) ("[A] sheriff shall issue a permit to carry a concealed handgun" subject to defined criteria).

Third, non-Colorado residents may obtain concealed carry permits in their states and, if the state of which they are a resident recognizes the validity of permits issued in Colorado,

[3] Open carry remains subject to lawful restrictions Plaintiffs do not challenge in this case, including prohibitions on carrying firearms in courthouses and on school grounds. C.R.S. §§ 18-12-105.3, -105.5.

Colorado recognizes the validity of permits issued by their state. *Id.* § 18-12-213(1); *Peterson* 707 F.3d at 1202 ("Colorado provides for reciprocity and recognition of CHLs issued by other states, but only for states that provide reciprocity to Colorado CHLs.").

Plaintiffs complain that because the states in which they reside do not "offer reciprocity to Colorado" permit holders, they "have no mechanism to carry a concealed handgun" in Colorado. Mot. at 5. Even accepting this contention as true, it has no bearing on Plaintiffs' Second Amendment claim against the State Defendants. "[T]he Second Amendment does not confer a right to carry concealed weapons." *Peterson*, 707 F. 3d at 1211. Even if Plaintiffs could not obtain permits for concealed carry in Colorado (by virtue of their own state's refusal to embrace the reciprocity Colorado offers), any effective prohibition on Plaintiffs' ability to engage in concealed carry is perfectly consistent with the "Nation's historical tradition of firearm regulation." *See Bruen*, 597 U.S. at 34, 52 (recognizing the "majority of the 19th-century courts to consider the question held that … prohibitions on carrying concealed weapons were lawful under the Second Amendment" (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)); *Peterson*, 707 F. 3d at 1210 ("There can be little doubt that bans on the concealed carrying of firearms are longstanding.").[4] State law does not restrict Plaintiffs' ability to openly carry firearms, meaning Plaintiffs' alleged inability to secure a concealed carry permit has no bearing on their Second Amendment rights.[5] *See Bruen*, 597 U.S. at 53 (acknowledging the

---

[4] Plaintiffs do not appear to challenge the constitutionality of concealed carry prohibitions under *Bruen*'s two-step framework. Nevertheless, at any hearing on the Motion, Defendants reserve the right to present evidence, including expert testimony, on "the long history of concealed carry restrictions in this country." *See Peterson*, 707 F. 2d at 1210-11 (listing sources).

[5] Plaintiffs cannot establish that Colorado's reciprocity statute violates the Second Amendment. Any challenge to C.R.S. § 18-12-213 necessarily fails at *Bruen*'s first step, because Colorado's

historical "consensus" that states cannot "ban public carry altogether" but that concealed carry prohibitions "have long been recognized as constitutional … if they did not similarly prohibit open carry").

This historical regime—allowing individuals to open carry while prohibiting concealed carry—is precisely what State law achieves when residents of states without reciprocity (like Plaintiffs) visit Colorado. Plaintiffs cannot carry their burden to demonstrate that regime is unconstitutional.

**B. The State Defendants have Eleventh Amendment immunity from suit.**

Plaintiffs' claims against the State Defendants are barred by the Eleventh Amendment.

State officials sued in their official capacities are immune from suit under the Eleventh Amendment because they are "an arm of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), and "such suits are no different from a suit against the State itself," *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quotations omitted). The *Ex parte Young* doctrine present a narrow exception to this immunity, when a plaintiff sues a state official for prospective relief concerning ongoing violations of federal law. *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024). Critically, the state official whom a plaintiff seeks to enjoin must have (1) "a particular duty to enforce" the

reciprocity statute does not "place any restrictions on either the 'keep[ing]' (*i.e.*, possession) or the 'bear[ing]' (*i.e.*, carrying) of arms." *Wolford v. Lopez*, 609 U.S. 185, 195 (2026) (quotation omitted). Rather, Colorado's reciprocity statute "actually *removes* a regulatory hurdle for certain nonresidents by allowing them to use their out-of-state permits." *McCoy v. Jacobson*, 176 F.4th 1055, 1058 (8th Cir. 2026) (emphasis added).

challenged statute and (2) "a demonstrated willingness to exercise that duty." *Id.* (citations omitted).

*Peterson* unequivocally identifies Colorado sheriffs as the proper defendants in a suit challenging Colorado's concealed carry reciprocity regime. *See* 707 F.3d at 1206 ("Colorado law is clear that sheriffs are responsible for administering the reciprocity system."). *Peterson* also specifically holds that Colorado's Executive Director of the Department of Public Safety is *not* connected to the enforcement of those laws and enjoys sovereign immunity in a lawsuit challenging their constitutionality. *Id.* at 1207 ("Colorado law requires sheriffs to enforce CHL reciprocity, not the executive director of the Department of Public Safety."). Plaintiffs named Director Hilkey despite this binding precedent, but their threadbare factual allegations concerning the Department of Public Safety's enforcement authority do nothing to overcome *Peterson*'s holding and the Eleventh Amendment bar. *See* FAC ¶ 29. Director Hilkey is immune from suit.

Plaintiffs' single-sentence allegation concerning the Attorney General fares no better. FAC ¶ 28 ("Due to Attorney General Phil Weiser's responsibility to enforce state law he has a connection to the enforcement of the challenged statute"). Allegations about the Attorney General's general duty to enforce state law are insufficient to invoke *Ex parte Young*. *E.g.*, *Free Speech Coal.*, 119 F.4th at 740 (Attorney General's "general responsibility for enforcing ... state laws" does not constitute enforcement authority "in connection with the [challenged law]"); *Drexler v. Weiser*, No. 25-1173, 2026 WL 2137881, at *4 (10th Cir. July 24, 2026) (similar). Plaintiffs allege nothing more about the connection between the Attorney General and the state

and local laws they challenge in this lawsuit. Without doing so, they cannot invoke *Ex parte Young*, and Attorney General Weiser is immune from suit.

**CONCLUSION**

This Court should deny Plaintiffs' Motion.

Respectfully submitted this 26th day of October, 2026.

PHILIP J. WEISER
Attorney General

s/ Kyle M. Holter

s/ Kolya Glick

***Emily Burke Buckley***
First Assistant Attorney General
***Kyle M. Holter***
***Kolya D. Glick***
Senior Assistant Attorneys General
Public Officials Unit | State Services Section
Colorado Department of Law
1300 Broadway, Denver, CO 80203
Telephone: 720.508.6000
emily.buckley@coag.gov
kyle.holter@coag.gov
kolya.glick@coag.gov

*Attorney for State Defendants*