**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-03690-DDD-KAS

GREG HOWETH;
ZACKARY DOUGHERTY;
NATIONAL RIFLE ASSOCIATION OF AMERICA; and
COLORADO STATE SHOOTING ASSOCIATION,

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO;
AL GARDNER, in his official capacity as Executive Director of Public Safety for the City and County of Denver;
RON THOMAS, in his official capacity as Chief of Police for the City and County of Denver;
MIKO BROWN, in her official capacity as City Attorney for the City and County of Denver;
ELIAS DIGGINS, in his official capacity as Sheriff of Denver;
PHIL WEISER, in his official capacity as Colorado Attorney General; and
STAN HILKEY, in his official capacity as Executive Director of the Colorado Department of Public Safety,

Defendants.

---

**DENVER DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ....................................................................................................... 3

A. Denver Law Regulates The Carry Of Firearms ..................................................... 3

B. Plaintiffs Seek An Immediate Injunction ............................................................. 3

PRELIMINARY INJUNCTION STANDARD ........................................................................ 4

ARGUMENT ........................................................................................................... 5

I. Plaintiffs Lack Standing To Seek Their Requested Injunction Against The City Of Denver ........................................................................................................... 5

A. Howeth and Dougherty Have Suffered No Injury In Fact From Denver's Ordinance .......................................................................................................... 5

B. Because Howeth And Dougherty Do Not Have Standing, The Organizational Plaintiffs Do Not Have Standing .................................................... 7

II. Plaintiffs Fail To Justify The Extraordinary Remedy Of A Preliminary Injunction .......... 7

A. Plaintiffs Fail To Show Irreparable Harm ............................................................ 7

B. Plaintiffs' Delay Weighs Against A Finding Of Irreparable Harm ........................ 8

III. Plaintiffs Fail To Show A Likelihood Of Success On The Merits .................................. 10

IV. The Balance Of Equities And The Public Interest Disfavor Preliminary Relief .............. 14

V. Plaintiffs' Proposed Preliminary Injunction Is Impermissibly Overbroad ...................... 14

VI. The Court Should Not Consolidate Pursuant To Rule 65(a)(2) ....................................... 16

CONCLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AbbVie Inc. v. Drummond*,
808 F. Supp. 3d 1266 (W.D. Okla. 2025) ....................16

*Am. Ass'n of People with Disabilities v. Herrera*,
580 F. Supp. 2d 1195 (D.N.M. 2008) ....................9

*Aposhian v. Barr*,
958 F.3d 969 (10th Cir. 2020) ....................14

*Archer v. Griswold*,
638 F. Supp. 3d 1246 (D. Colo. 2022) ....................8

*Ayotte v. Planned Parenthood of N. New England*,
546 U.S. 320 (2006) ....................15

*Baird v. Bonta*,
709 F. Supp. 3d 1091 (E.D. Cal. 2023) ....................11

*Baird v. Bonta*,
163 F.4th 723 (9th Cir. 2026) ....................11

*Colorado v. U.S. Env't Prot. Agency*,
989 F.3d 874 (10th Cir. 2021) ....................5, 7

*Colo. Motor Carriers Ass'n v. Town of Vail*,
153 F.4th 1052 (10th Cir. 2025) ....................8

*Colo. Union of Taxpayers, Inc. v. Griswold*,
2020 WL 6290380 (D. Colo. Oct. 27, 2020) ....................10

*Colo. Outfitters Ass'n v. Hickenlooper*,
823 F.3d 537 (10th Cir. 2016) ....................5, 6

*DeWilde v. Att'y Gen. of U.S.*,
2024 WL 1550708 (10th Cir. 2024) ....................6

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
356 F.3d 1256 (10th Cir. 2004) ....................4, 10

*Frey v. City of N.Y.*,
157 F.4th 118 (2d Cir. 2025) ....................11, 12

*Hightower v. City of Boston*,
693 F.3d 61 (1st Cir. 2012) .......... 6

*Kipke v. Moore*,
165 F.4th 194 (4th Cir. 2026) .......... 14

*Libertarian Party of Erie Cnty. v. Cuomo*,
970 F.3d 106 (2d Cir. 2020) .......... 6

*Market Synergy Grp., Inc. v. U.S. Dep't of Lab.*,
2016 WL 6948061 (D. Kan. Nov. 28, 2016) .......... 8

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 5

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) .......... 2, 9, 10, 11

*Nat'l Ass'n for Gun Rights v. Lamont*,
153 F.4th 213 (2d Cir. 2025) .......... 10

*N. Arapahoe Tribe v. Hodel*,
808 F.2d 741 (10th Cir. 1987) .......... 16

*O'Neil v. Neronha*,
2025 WL 2197313 (D.R.I. Aug. 1, 2025) .......... 11

*United States v. Rahimi*,
602 U.S. 680 (2024) .......... 15

*Rocky Mountain Gun Owners v. Polis*,
121 F.4th 96 (10th Cir. 2024) .......... 5, 10

*SNL Workforce Freedom All. v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC*,
2022 WL 2065062 (D.N.M. June 8, 2022) .......... 8

*Trump v. CASA*,
606 U.S. 831 (2025) .......... 14, 15

*Uber Techs., Inc. v. Moss*,
2025 WL 1420940 (D. Colo. Jan. 31, 2025) .......... 15

*Utah Republican Party v. Herbert*,
144 F. Supp. 3d 1263 (D. Utah 2015) .......... 16

*We the Patriots, Inc. v. Doyle*,
2026 WL 592093 (D. Conn. Mar. 2, 2026) .......... 11, 14

*Westfall v. Miller*,
77 F.3d 868 (5th Cir. 1996) ....................................................................................6

*Winter v. Nat. Res. Def. Council Inc.*,
555 U.S. 7 (2008)....................................................................................................4, 7

*Wright v. Nat'l Bd. of Med. Exam'rs*,
2021 WL 5028463 (D. Colo. Oct. 15, 2021) ............................................................8

*Wyoming v. U.S. Dep't of Interior*,
2015 WL 9463708 (D. Wyo. Dec. 17, 2015)...........................................................16

*Wyoming v. U.S. Dep't of the Interior*,
2017 WL 161428 (D. Wyo. Jan. 16, 2017)..................................................................8

**State Cases**

*Abed v. United States*,
278 A.3d 114 (D.C. 2022) ........................................................................................11

*Carr v. State*,
34 Ark. 448 (1879)....................................................................................................13

*State v. Chandler*,
5 La. Ann. 489 (1850)...............................................................................................12

*Eslava v. State*,
49 Ala. 355 (1873) ....................................................................................................13

*Gholson v. State*,
53 Ala. 519 (1875) ....................................................................................................13

*McDaniels v. State*,
419 So. 3d 1180 (Fla. Dist. Ct. App. 2025) ..............................................................11

*McGuirk v. State*,
64 Miss. 209 (1887) ..................................................................................................13

*State v. Reid*,
1 Ala. 612 (1840) ......................................................................................................12

*Sinnissippi Rod & Gun Club, Inc. v. Raoul*,
2024 IL App (3d) 210073 .........................................................................................11

*Smith v. State*,
50 Tenn. 511 (1872)..................................................................................................13

### City Ordinances

Denv., Colo. Ordinance No. 41, § 5 .......... 2

Denv., Colo. Rev. Mun. Code § 38-117 .......... 2

Denv., Colo. Rev. Mun. Code § 38-118 .......... *passim*

Denv., Ordinances of the City, pt. 3, ch.5, art. 3 § 12 .......... 2

### Federal Rules

Fed. R. Civ. P. 65 .......... 16

### Constitutional Provisions

U.S. Const. amend. II .......... *passim*

The City and County of Denver, Al Gardner, Ron Thomas, Miko Brown, and Elias Diggins (the "Denver Defendants") respectfully submit this memorandum in response to Plaintiffs' Motion for Preliminary Injunction.

## PRELIMINARY STATEMENT

For decades, the City of Denver has regulated the public carry of handguns in a manner sensitive both to the need to maintain public order in dense urban areas and to the Second Amendment rights of those living in, or traveling through, Denver. Section 38-118 of the Denver Municipal Code regulates the carrying of weapons in Denver. While Section 38-118(a) and (b), in some instances, prohibit concealed and open carry of weapons, respectively, they do so subject to exceptions set out in Section 38-118(c) and (d). Section 38-118(c) permits open or concealed carry "with valid authorization from the city" or while "[t]ransporting the weapon while travelling within a private automobile … for the purposes of hunting or the lawful protection of such person or their property," among other exceptions. Section 38-118(d) provides an "[e]xception for concealed carry permit holders," which allows concealed carry if a person "holds a valid permit to carry a concealed handgun and the person is carrying the handgun in conformance with any applicable federal, state, or local law."

Plaintiffs—two individuals and two pro-firearms organizations—ask the Court to enjoin Denver's regulation of public carry, asserting that absent immediate relief, they will suffer irreparable harm. Plaintiffs are wrong. Nonresidents with a concealed carry permit from another state may carry in Denver. Their argument to the contrary ignores and misconstrues provisions of the Denver law and falls woefully short of meeting their substantial heightened burden of showing they are entitled to an immediate mandatory injunction.

*First*, Plaintiffs do not have standing to challenge Denver's law. They incorrectly assert that Denver "maintains *a ban* on handgun carry through a combination of its own laws and its

implementation of Colorado law." Amended Complaint ("Compl.") ¶ 7 (emphasis added). But as explained, Denver law allows concealed carry by "concealed carry permit holders" in "conformance with any applicable federal, state, or local law," and open or concealed carry "with valid authorization from the city," among other reasons. Denv., Colo. Rev. Mun. Code ("D.R.M.C.") § 38-118.[1] Plaintiffs cannot establish injury and lack Article III standing.

*Second*, Plaintiffs fail to demonstrate irreparable harm. Denver has regulated open carry since at least 1952, and concealed carry since the nineteenth century.[2] *See also* Compl. ¶ 46. Plaintiffs fail to demonstrate any urgency necessitating the extraordinary remedy of preliminary injunctive relief, in lieu of ordinary orderly litigation.

*Third*, Plaintiffs fail to show a likelihood of success on the merits regarding whether Denver's public carry regulations are unconstitutional. Under *New York State Rifle & Pistol Association Inc. v. Bruen*, cities can lawfully eliminate one kind of public carry—open carry or concealed carry—so long as they leave open the other option. 597 U.S. 1, 59 (2022). Denver's ordinance eliminates neither and leaves open both open and concealed carry. Courts have repeatedly held that laws like Denver's that regulate but do not preclude public carry comply with the Second Amendment. Plaintiffs point to no historical analogues inconsistent with Denver's ordinance. They challenge only the as-applied effect of Denver's open-carry ordinance combined

---

[1] Plaintiffs purport to challenge the constitutionality of D.R.M.C. § 38-117(a), (b), and (f). *See, e.g.*, Compl. ¶¶ 2, 12, 201, at 49; Mot. at 2, 6. But Section 38-117 relates to possession of certain unlawful weapons, not the public carrying of weapons. And there is no subparagraph (f) of D.R.M.C. § 38-117. Denver therefore assumes for the purposes of Plaintiffs' motion that they intend to challenge D.R.M.C. § 38-118.

[2] *See* Denv., Colo. Ordinance No. 41, § 5, at 2 (1952) (making it "unlawful for any person … to carry or use [] a revolver or pistol of any description," subject to certain exceptions on private property); Denv., Colo., Ordinances of the City, pt. 3, ch.5, art. 3 § 12 (Times Steam Printing Company 1884) (prohibiting concealed carry) (available at https://firearmslaw.duke.edu/laws/denver-ordinances-of-the-city-pt-3-ch-5-art-3-12-times-steam-printing-company-1884).

with Colorado's licensing regime. Their showing falls well short of justifying the extraordinary preliminary relief they seek—namely, enjoining Denver's public carry regulations.

*Fourth*, in any event, Plaintiffs request an equitable remedy far greater than is permissible or than they have even attempted to support. The Court should reject their request.

## BACKGROUND

### A. Denver Law Regulates The Carry Of Firearms

Denver Municipal Code Section 38-118 prohibits (a) "any person to wear, carry, or transport any weapon concealed on or about their person" and (b) "any person to openly wear, carry, or transport any weapon on or about their person or vehicle," but only "[e]xcept as provided in subsections (c) and (d)," as applicable. Section 38-118(c) allows the open or concealed carry of firearms (1) by a "law enforcement officer," (2) by an "active-duty member of the United States Armed Forces, while engaged in the performance of their duties," (3) when "[a]cting with valid authorization from the city," (4) while "[i]n their own dwelling, place of business, or on property owned or under their control," or (5) while "[t]ransporting the weapon while travelling within a private automobile or other private means of conveyance for the purposes of hunting or [for] lawful protection … ." D.R.M.C. § 38-118(c). Section 38-118(d), titled "Exception for concealed carry permit holders," authorizes concealed carry "if at the time of carrying a handgun, the person holds a valid permit to carry a concealed handgun and the person is carrying the handgun in conformance with any applicable federal, state, or local law … ." *Id.* § 38-118(d). The Denver Police Department receives and processes requests to carry firearms in Denver. *See* Decl. of Ron Thomas ("Thomas Decl.") ¶¶ 1, 7.

### B. Plaintiffs Seek An Immediate Injunction

Plaintiffs are nonresidents Greg Howeth and Zackary Dougherty and firearm-advocacy organizations the National Rifle Association of America ("NRA") and the Colorado State Shooting

Association ("CSSA"). Howeth alleges that he routinely travels to Denver to see extended family and friends, stays in Denver "to eat, shop, run errands, and engage in other activity," and "go[es] to Denver while staying at his second home" in Colorado. Compl. ¶¶ 65, 67–68. Dougherty lived in Colorado until August 2025, his employer resides in Colorado, and he alleges that he travels frequently to visit friends and acquaintances in Denver. *Id.* ¶¶ 97–99, 101–03. Although Howeth and Dougherty have long lived in or visited Colorado, they do not allege they sought authorization to open carry in Denver, nor do they allege they applied for Colorado concealed carry permits until 2026: Howeth allegedly applied on May 26, 2026, and Dougherty applied on April 19, 2026, but both were allegedly denied under Colorado law because of their status as non-residents. *Id.* ¶¶ 62–64; 95–96. The NRA and CSSA allege they bring this action "on behalf of [their] members who are subject" to Colorado and Denver laws. *Id.* ¶¶ 5–6.

Plaintiffs seek the extreme remedy of a preliminary injunction. Although their motion is unclear about the contours of the injunction they seek, their operative complaint purports to seek:

> An order preliminarily and permanently enjoining Defendants, and all persons bound under Federal Rule of Civil Procedure 65(d)(2), from applying or enforcing C.R.S. § 18-12-203, § 18-12-213, and Denver, Colo., Rev. Mun. Code § 38-117(a), (b), and (f), in conjunction with one another, so as to leave the individual Plaintiffs, members of Plaintiff National Rifle Association of America, members of Plaintiff Colorado State Shooting Association, and residents of states whose concealed-carry permits are not valid in Colorado without any lawful means of carrying a handgun in public for self-defense in Denver, both facially and as applied to the litigants.

Compl. at 49.

## PRELIMINARY INJUNCTION STANDARD

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party must make a "clear and unequivocal" showing, *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004), that: "(1) it is substantially likely to succeed on the merits, (2) it will suffer irreparable

injury if the injunction is denied, (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction, and (4) the injunction would not be adverse to the public interest," *Colorado v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021).[3] Where plaintiffs seek an injunction that would "alter the status quo," they must meet an even higher standard that requires "a strong showing both on the likelihood of success on the merits and on the balance of the harms." *Id.* at 883–84.

## ARGUMENT

### I. Plaintiffs Lack Standing To Seek Their Requested Injunction Against The City Of Denver

Plaintiffs "must demonstrate standing for each claim that they press against each defendant." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). To establish Article III standing, plaintiffs must demonstrate (1) "an injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a "likelihood that the injury will be redressed by a favorable decision." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (internal quotations omitted). At the preliminary injunction stage, plaintiffs must make a "clear showing that they are likely to establish each element" and "must move beyond the mere allegations in their pleadings and provide specific facts, supported by affidavits or other evidence, to demonstrate standing." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 109–10 (10th Cir. 2024).

#### A. Howeth and Dougherty Have Suffered No Injury In Fact From Denver's Ordinance

Howeth and Dougherty were never denied the ability to publicly carry under Denver law. To establish injury in fact, plaintiffs must show "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest, *but proscribed by [the challenged] statute*," and

[3] Internal quotation marks, citations, and alterations are omitted from all cited sources, unless noted.

(2) that "there exists a credible threat of prosecution thereunder." *Hickenlooper*, 823 F.3d at 545 (emphasis added). Denver law's concealed carry restriction has an "[e]xception for concealed carry permit holders." D.R.M.C. § 38-118(d). Howeth alleges that he has a concealed carry permit from the States of Hawaii and Utah. Compl. ¶¶ 50-51. Dougherty alleges that he "routinely and legally carries a handgun for self-defense" in South Carolina, *id.* ¶ 104, and he does not allege that he lacks a concealed-carry permit or is unable to obtain one. Denver law also provides other avenues to open or concealed carry. Section 38-118(c), for instance, permits open or concealed carry "with valid authorization from the city," among other exceptions. D.R.M.C. § 38-118(c)(3). Howeth and Dougherty do not allege that they were denied such authorization from the City, nor do they allege they even sought it. Consistent with Denver law, the City would have considered such a request for authorization if it had received one. *See* Thomas Decl. ¶¶ 5–7. It did not.

Courts dismiss pre-enforcement Second Amendment claims for lack of standing when plaintiffs did not pursue available avenues to keep or bear arms. In *DeWilde v. Attorney General of United States*, the Tenth Circuit held that a plaintiff lacked standing to seek prospective relief for possession of a machine gun because he had not, "in his individual capacity, applied for or been denied an application to make a machinegun" and had therefore not suffered a denial. 2024 WL 1550708, at *2 (10th Cir. 2024). Other courts of appeals have held similarly. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020) (no injury in fact where plaintiffs failed to allege they applied for firearm license); *Hightower v. City of Boston*, 693 F.3d 61, 70 (1st Cir. 2012) (plaintiff "lack[ed] standing to raise a claim as to a[n] [open carry license]" because "she has never applied for such a license, been denied one, or had such a license revoked"); *Westfall v. Miller*, 77 F.3d 868, 872 (5th Cir. 1996) (plaintiff lacked standing because she was told of additional options for getting a firearm license she did not use and "the completion of the

statutory procedure [is] necessary to establish … injury"). Plaintiffs cannot show that they are prohibited from publicly carrying in Denver when the plain text of Denver's ordinance provides them avenues to do so. Without any such prohibition, Howeth and Dougherty lack an injury in fact.

### B. Because Howeth And Dougherty Do Not Have Standing, The Organizational Plaintiffs Do Not Have Standing

The only harm that the NRA and CSSA allege is to their members. *See* Compl. ¶¶ 5–6 (alleging harm based on "credible threat of enforcement" against their members). As such, to establish standing, the NRA and CSSA "ha[ve] to prove … that [their] members would otherwise have standing to sue in their own right." *Hickenlooper*, 823 F.3d at 550 (organization did not have standing where its member failed to show evidence of injury). But they allege no facts—much less offer any evidence—showing that Denver's ordinance prohibited any other of their members from carrying in Denver (they do not allege any facts about any other members at all). *See* Compl. ¶¶ 112–13. Their standing thus turns entirely on the standing of Howeth and Dougherty. Because Howeth and Dougherty do not have standing, neither do the NRA or CSSA.

## II. Plaintiffs Fail To Justify The Extraordinary Remedy Of A Preliminary Injunction

### A. Plaintiffs Fail To Show Irreparable Harm

Because they have not availed themselves of avenues to public carry provided by Denver law, or otherwise showed that Denver law is precluding them from publicly carrying, Plaintiffs also cannot show that they have been irreparably harmed. Plaintiffs must show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22; *see also U.S. Env't Prot. Agency*, 989 F.3d at 887 ("mere possibility" of harm is insufficient). Plaintiffs' failure to demonstrate that Denver law prohibits them from publicly carrying, including by pursuing available statutory authorization before filing this lawsuit, means that Plaintiffs have not suffered

any concrete injury at all, let alone any irreparable harm warranting extraordinary preliminary injunctive relief. Courts deny preliminary injunctive relief where exceptions from the asserted harm are still available. *See Wright v. Nat'l Bd. of Med. Exam'rs*, 2021 WL 5028463, at *9 n.4 (D. Colo. Oct. 15, 2021) (risk of failing licensing exams within a prescribed period did not constitute irreparable harm where plaintiff could, but did not, apply for a "good cause exception" because the asserted harm remained "speculative or unsubstantiated"); *SNL Workforce Freedom All. v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC*, 2022 WL 2065062, at *3 (D.N.M. June 8, 2022) (no irreparable harm where plaintiffs' religious exemption request to vaccine mandate was pending); *Wyoming v. U.S. Dep't of the Interior*, 2017 WL 161428, at *11 (D. Wyo. Jan. 16, 2017) (no irreparable harm where party could obtain statutory exemption from natural gas regulation); *Market Synergy Grp., Inc. v. U.S. Dep't of Lab.*, 2016 WL 6948061, at *30 (D. Kan. Nov. 28, 2016) (no irreparable harm where plaintiffs could apply for exemptions under DOL no-compensation rule for certain ERISA fiduciaries). That is exactly the case here: because Plaintiffs fail to show that they are prohibited from public carry by Denver law, any claimed denial of their ability to public carry—and thus any resulting alleged irreparable harm—remains entirely speculative.

### B. Plaintiffs' Delay Weighs Against A Finding Of Irreparable Harm

"[U]nreasonable delay undercuts a finding of irreparable harm." *Colo. Motor Carriers Ass'n v. Town of Vail*, 153 F.4th 1052, 1066 (10th Cir. 2025). A delay is unreasonable where it reflects a party's decision "to sit on its rights." *Id.* In *Colorado Motor Carriers*, for example, a one-year delay in seeking relief from an ordinance after its amendment weighed against a finding of irreparable harm. *Id.* For constitutional claims, too, a "delay in seeking [injunctive] relief cuts against finding irreparable injury." *Archer v. Griswold*, 638 F. Supp. 3d 1246, 1262 (D. Colo.

2022); *see also Am. Ass'n of People with Disabilities v. Herrera*, 580 F. Supp. 2d 1195, 1246 (D.N.M. 2008) (three-year delay "considerably undercut[]" plaintiffs' irreparable harm).

Plaintiffs' prolonged inaction (or failure to take action altogether) shows there is no emergency. Howeth and Dougherty have lived in or visited Denver for years without suing over local gun regulations. Howeth allegedly owns a second home in Weld County, Colorado, "routinely travels to Denver" to "see extended family and friends," and "stays in Denver to eat, shop, run errands, and engage in other activity." Compl. ¶¶ 65, 67–68. Dougherty lived in Loveland, Colorado until August 2025, and although he now resides in South Carolina, he allegedly has friends and acquaintances in Denver, and his employer is in Loveland, Colorado. *Id.* ¶¶ 86, 97–99. Like Howeth, he "stays in Denver to eat, shop, [and] run errands," and "routinely travels to Denver because he flies into Denver International Airport." *Id.* ¶¶ 101–02. Yet, although Denver has regulated public carry for decades, Plaintiffs did not even seek concealed carry permits until April and May of this year, when they allegedly were denied. Compl. ¶¶ 62–64, 95–96. They waited even longer—until August—to file their complaint. They then waited yet another month before seeking preliminary relief.

The NRA and CSSA, meanwhile, have both operated in Colorado for decades, in part to oppose firearm regulations. The NRA was "[f]ounded in 1871" and is "devoted to protecting the right to keep and bear arms." Compl. ¶ 5. CSSA is "a Colorado nonprofit" with members "within and outside Colorado" that is "devoted to protecting the right to keep and bear arms," *id.* ¶ 6; it asserts that "[s]ince 1999, CSSA has been instrumental in defeating numerous anti-gun bills introduced at the [Colorado] General Assembly."[4] Given the NRA's and CSSA's "long history of

[4] *About*, COLO. STATE SHOOTING ASS'N (last visited Oct. 21, 2026), https://cssa.org/content.aspx?page_id=22&club_id=243984&module_id=41165.

political advocacy in Colorado," their decades-long delay in challenging the Denver ordinance "suggests a manufactured urgency rather than a true threat of irreparable harm." *Colo. Union of Taxpayers, Inc. v. Griswold*, 2020 WL 6290380, at *3 (D. Colo. Oct. 27, 2020).

## III. Plaintiffs Fail To Show A Likelihood Of Success On The Merits

Plaintiffs do not meet their burden to demonstrate a substantial likelihood of success on the merits. The Second Amendment is not an unlimited right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 597 U.S. at 21 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). "[T]he government may still lawfully regulate firearms, as it has done for centuries." *Rocky Mountain Gun Owners*, 121 F.4th at 113.

Plaintiffs' burden is heavy at this emergency stage. Because Plaintiffs bear the burden to prove their substantial likelihood of success, they must show that Denver is unlikely to demonstrate that its ordinance is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24; *see also Nat'l Ass'n for Gun Rights v. Lamont*, 153 F.4th 213, 229 (2d Cir. 2025) (plaintiffs at preliminary injunction stage had to "show that … Defendants cannot carry their burden of justifying the challenged statute[] by demonstrating that [it] comport[s] with the Nation's historical tradition of firearm regulation"), *cert. granted sub nom. Grant v. Higgins*, 146 S. Ct. 2811 (2026). Plaintiffs' showing must be "clear and unequivocal." *Dominion Video Satellite,* 356 F.3d at 1261. They have not met that burden.

Cities and "[s]tates [can] lawfully eliminate one kind of public carry"—open carry or concealed carry—"so long as they le[ave] open" the other option. *Bruen*, 597 U.S. at 59. Denver law eliminates neither: it permits both open and concealed carry under certain circumstances, which include by "concealed carry permit holders" under any federal, state, or local law and "with valid authorization from the city." Plaintiffs purport to challenge only a mischaracterized, caricatured version of Denver's regulation of open carry. Compl. ¶ 1 (challenging "the combined

operation" of Colorado law and "Denver's open-carry ban"); *see* D.R.M.C. § 38-118. Open carry regulations themselves have been regularly upheld under *Bruen*, even ones without Denver's exemptions. *See, e.g.*, *Frey v. City of N.Y.,* 157 F.4th 118, 139 (2d Cir. 2025) (upholding, at preliminary injunction stage New York State's "open carry ban"); *We the Patriots, Inc. v. Doyle*, 2026 WL 592093, at *6–7, *7 n.5 (D. Conn. Mar. 2, 2026) (upholding Connecticut state law prohibiting most open carry, except for certain exceptions such as hunting and firearms training); *O'Neil v. Neronha*, 2025 WL 2197313, at *3 (D.R.I. Aug. 1, 2025) (upholding Rhode Island's discretionary licensing regime for open carry, and holding plaintiffs' claims were "foreclosed by *Bruen*"); *Sinnissippi Rod & Gun Club, Inc. v. Raoul*, 2024 IL App (3d) 210073, ¶¶ 30–33, 39 (upholding Illinois law "proscrib[ing] the open carriage of firearms in public"), *cert. denied* 146 S. Ct. 1815 (2026); *see also Abed v. United States*, 278 A.3d 114, 129 n.27 (D.C. 2022) (noting that "nothing in the [*Bruen*] opinion implies that a State must allow open carry"). *But see McDaniels v. State*, 419 So. 3d 1180, 1189–94 (Fla. Dist. Ct. App. 2025) (intermediate state appellate court striking down Florida's open carry ban).[5]

These decisions are well-reasoned under *Bruen*. Open-carry regulations like Denver's are consistent with the "proliferat[ion]" of historical "public-carry restrictions" in the period "after the ratification of the Second Amendment in 1791," *Bruen*, 597 U.S. at 50, including those that prohibited one kind of public carry altogether. *Id.* at 53. Such regulations were common in the second half of the nineteenth century. From 1860 to 1900, "24 states enacted anti-open carry laws, and 9 states did so in the early 1900s," and "[s]tate courts generally upheld these laws." *Frey*, 157

[5] Although a panel of the Ninth Circuit held unconstitutional California's categorical ban on open carry in counties with a population greater than 200,000, *Baird v. Bonta*, 163 F.4th 723 (9th Cir. 2026), the Ninth Circuit subsequently granted rehearing en banc and vacated the panel opinion, *Baird v. Bonta*, 172 F.4th 1105 (9th Cir. 2026).

F.4th at 139 n.13 (quoting *Baird v. Bonta*, 709 F. Supp. 3d 1091, 1136 (E.D. Cal. 2023)). Meanwhile, nine states and territories restricted the concealed carry of pistols between 1813 and 1859. *Bruen*, 597 U.S. at 53 n.16 (collecting laws). Courts sustained such laws as "prohibiting only a particular mode of bearing arms which is found dangerous to the peace of society." *Frey*, 157 F.4th at 139 (quoting *State v. Jumel*, 13 La. Ann. 399, 399–400 (1858)); *see State v. Reid*, 1 Ala. 612, 616–17 (1840); *State v. Chandler*, 5 La. Ann. 489, 490 (1850). As Plaintiffs acknowledge, before 1900, "[c]oncealed carry … was sometimes restricted or banned entirely," and "[c]ourts generally approved of this arrangement." Mot. 9. Open-carry restrictions burden the right to carry to a "similar" degree as these historical concealed-carry bans because they "eliminate one kind of public carry" while permitting another option of carry that does not hinder the capacity for self-defense. *Bruen*, 597 U.S. at 59. This historical record led many of the decisions above to find open-carry restrictions constitutional.

Against this backdrop, Plaintiffs make no clear and unequivocal showing that they are likely to succeed in enjoining Denver's ordinance. They do not address this case law. They do not conduct *Bruen*'s required analogical reasoning. They offer no evidence or other proof at all.[6]

Instead, they fight a strawman—that the combined operation of Denver's and Colorado's laws "produces a complete ban on handgun carry." Compl. at 49. That is not accurate. As discussed, Denver regulates but does not ban concealed carry or open carry. D.R.M.C. § 38-118(a)-(d). Denver allows concealed carry by "concealed carry permit holders"—*i.e.*, when a "person holds a valid permit to carry a concealed handgun and the person is carrying the handgun in conformance with any applicable federal, state, or local law"—and it allows either concealed or

[6] At any hearing on the Motion, the Denver Defendants reserve the right to present evidence, including expert testimony, of the historical tradition of statutory "restrictions governing … the manner of carry." *Bruen*, 597 U.S. at 38.

open carry under some circumstances, including "with valid authorization from the city" and when "[t]ransporting [a] weapon while travelling within a private automobile or other private means of conveyance for the purposes of hunting or the lawful protection of such person or their property, or another person or that person's property." *Id.* Plaintiffs overlook these exceptions, including this last provision, which is consistent with the historical "traveler's exemption" providing a right to carry while traveling through a jurisdiction that Plaintiffs invoke throughout their complaint.[7] *See, e.g.*, *Carr v. State*, 34 Ark. 448, 449 (1879) (such exceptions exist "to enable travelers to protect themselves on the highways, or in transit through populous places—not to allow them the privilege of mixing with the people in ordinary intercourse, about the streets"); *Eslava v. State*, 49 Ala. 355, 357 (1873) (traveler exception applied to "travel to a distance from home, and not within the ordinary line of the person's duties, habits, or pleasure").[8] Historical "travel exceptions did not describe the everyday movement through public spaces like town squares and commercial districts." *Kipke v. Moore*, 165 F.4th 194, 211 (4th Cir. 2026).

For all these reasons, Plaintiffs have not carried their high burden to show substantial likelihood of success on the merits, clearly and unequivocally, at this early stage.

---

[7] The traveler's exemptions cited in Plaintiffs' complaint also all presupposed a valid, general restriction on public carry of firearms that sometimes took the form of prohibitions on open and concealed carry. *See, e.g.*, Compl. ¶ 124 (1871 Texas law fining *anyone* "carrying" a weapon except for "persons traveling"); *id.* ¶ 126 (1887 New Mexico law "banning *all* carry of deadly weapons" *except* for "persons traveling … on the[] road" (emphasis added)). They are thus the exceptions that prove the rule: public-carry prohibitions were historically commonplace.

[8] *See also, e.g.*, *Gholson v. State*, 53 Ala. 519, 521 (1875) (exceptions apply when "setting out [] on a journey" beyond "the ordinary habits, business, or duties of the person, to a distance from his home, and beyond the circle of his friends or acquaintances"); *Smith v. State*, 50 Tenn. 511, 513 (1872) (concealed carry exceptions for travelers "did not embrace a mere ramble in one's own neighborhood across the lines of contiguous counties"); *McGuirk v. State*, 64 Miss. 209, 212 (1887) ("[t]he 'traveling or setting out on a journey' intended by [Missisippi's] statute to be an excuse for carrying concealed weapons means a travel of such distance as to take one beyond the circle of his friends and acquaintances").

## IV. The Balance Of Equities And The Public Interest Disfavor Preliminary Relief

Finally, Plaintiffs have "not shown that the threatened injury outweighs the harms that the preliminary injunction will cause the government or that the injunction, if issued, will not adversely affect the public interest." *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (balance of the equities favored the government in constitutional challenge because bump stock ban "support[ed] the safety of the public in general"). In cases against governmental defendants, the balance of the equities and the public interest merge. *See id.* Plaintiffs do not prove that their individual interests outweigh the public's. The only interest they assert is an alleged constitutional harm, which they have not established. On the other hand, Denver has a substantial interest in regulating public carry to maintain public safety in dense urban environments and at the kinds of large, crowded public gatherings that are typical in a city. And, as courts recognize, legislatures that regulate open carry in particular are "address[ing] the concern of others when people walking around with open carry guns intimidate others." *We the Patriots*, 2026 WL 592093, at *7.

## V. Plaintiffs' Proposed Preliminary Injunction Is Impermissibly Overbroad

No preliminary injunction should issue. But if it did, it must be far narrower than what Plaintiffs purport to seek—namely, an injunction of Denver public-carry ordinance "both facially and as applied to the litigants." Compl. at 49.

*First*, any preliminary injunction could only apply to the actual plaintiffs—Howeth, Dougherty, the NRA, and the CSSA. Federal courts cannot grant injunctive relief to nonparties who have neither asked for it nor demonstrated that they are entitled to it. *See Trump v. CASA*, 606 U.S. 831, 844 (2025); *Firearms Policy Coalition v. Bondi,* 805 F. Supp. 3d 721, 733 (N.D. Tex. 2025) (enjoining gun regulation only as to associational plaintiff and its members).

*Second*, the NRA and CSSA have failed to meet their burden of demonstrating that any of their members who are not parties to this litigation are entitled to relief. They offer no evidence

of any members besides Howeth and Dougherty who wish to publicly carry in Denver, let alone who are unable to do so. Nor do they offer any means of discerning and verifying who their members are in order to determine who a member-wide injunction would cover.

*Third*, to the extent Plaintiffs seek to enjoin Denver's public carry laws "facially," Compl. at 49, ¶¶ 1–2, they fail to demonstrate that "no set of circumstances exists under which [Denver's law] would be valid," as they must to prevail on a facial challenge. *United States v. Rahimi*, 602 U.S. 680, 693 (2024). This is especially true given the many avenues to lawfully carry firearms in Denver. *See supra* at 3, 13. Any such "facial" injunction would contravene the rule that injunctive relief must not "interfere with enforcement of contested statutes or ordinances *except with respect to the particular federal plaintiffs*." *CASA*, 606 U.S. at 844 (emphasis added).

*Fourth*, "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." *Uber Techs., Inc. v. Moss*, 2025 WL 1420940, at *2 (D. Colo. Jan. 31, 2025) (quoting *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024)); *see also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006) ("When confronting a constitutional flaw in a statute," courts must "try to limit the solution to the problem."). Despite Plaintiffs' overbroad ask for an injunction of Denver's public-carry laws "both facially and as applied to the litigants," Compl. at 49, they allege only the narrow problem of Howeth and Dougherty's supposed individual inability to carry openly or concealed within Denver. No other NRA or CSSA member offers proof to support relief. At most, then, preliminary injunctive relief would provide Howeth and Dougherty "some manner" (Mot. 12) to publicly carry in Denver, nothing more. *See, e.g.*, *Utah Republican Party v. Herbert*, 144 F. Supp. 3d 1263, 1285–86 (D. Utah 2015) (severing and invalidating only one provision of the statute alleged to be unconstitutional); *AbbVie Inc. v. Drummond*, 808 F. Supp. 3d 1266 (W.D. Okla. 2025) (similar).

"Usually, only the unconstitutional applications" of a regulatory framework "will be enjoined while the other applications remain in force." *Herbert*, 144 F. Supp. 3d at 1285.

*Fifth*, Plaintiffs fail to describe their requested injunction with sufficient specificity to permit compliance with Rule 65(d), which requires an injunction to "state its terms specifically" and "describe in reasonable detail" the "acts restrained or required." Fed. R. Civ. P. 65(d). Plaintiffs do not specify which provisions of Denver and Colorado laws should be enjoined; characterize their challenge as "facial" even though they only challenge the effect of the laws in particular circumstances; and purport to challenge Section 38-117, which does not even govern public carry. Mot. 1.

## VI. The Court Should Not Consolidate Pursuant To Rule 65(a)(2)

The Court should deny Plaintiffs' request to consolidate the preliminary injunction hearing with a trial on the merits under Fed. R. Civ. P. 65(a)(2). Mot. 18–20. "Before a consolidation order may issue," the parties must "have a full opportunity to present their evidence." *N. Arapahoe Tribe v. Hodel*, 808 F.2d 741, 753 (10th Cir. 1987). Courts should not grant consolidation where doing so would prejudice the parties' ability to "develop all arguments and evidence" necessary. *Wyoming v. U.S. Dep't of Interior*, 2015 WL 9463708, at *1 (D. Wyo. Dec. 17, 2015). Here, there are numerous factual and evidentiary issues that require the production of evidence and a careful consideration of the merits, including whether Plaintiffs can publicly carry under any exceptions under Section 38-118(c)-(d); whether any historically analogous statutes support an injunction of Denver's statute; and Denver's interests in enforcing its gun regulations, including its public safety priorities. Consolidating now would prejudice the parties as well as the Court's ability to review necessary evidence.

## CONCLUSION

For these reasons, Plaintiffs' motion for preliminary injunction should be denied.

Dated: October 26, 2026

Respectfully submitted,


*/s/ Ryan M. Chabot*
Ryan M. Chabot
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(t) 212-230-8800
ryan.chabot@wilmerhale.com

Michiko A. Brown
Ashley Kelliher
Denver City Attorney's Office
201 W. Colfax Ave.
Denver, CO 80202
(970) 217-8299
michiko.brown@denvergov.org
ashley.kelliher@denvergov.org

*Counsel for Denver Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Opposition to Plaintiffs' Motion for Preliminary Injunction complies with the length limitation set forth in DDD Civ. P.S. III(A)(2).

*<u>/s/ Ryan M. Chabot</u>*
Ryan M. Chabot
Counsel for Denver Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which served all counsel of record.

*/s/ Ryan M. Chabot*
Ryan M. Chabot
Counsel for Denver Defendants