**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:26-cv-03690-DDD-KAS**

GREG HOWETH;
ZACKARY DOUGHERTY;
NATIONAL RIFLE ASSOCIATION OF AMERICA; and
COLORADO STATE SHOOTING ASSOCIATION,

*Plaintiffs*,

v.

CITY AND COUNTY OF DENVER, COLORADO;
AL GARDNER, in his official capacity as Executive Director of Public Safety for the City and County of Denver;
RON THOMAS, in his official capacity as Chief of Police for the City and County of Denver;
MIKO BROWN, in her official capacity as City Attorney for the City and County of Denver; ELIAS DIGGINS, in his official capacity as Sheriff of Denver;
PHIL WEISER, in his official capacity as Colorado Attorney General; and
STAN HILKEY, in his official capacity as Executive Director of the Colorado Department of Public Safety,

*Defendants*.

---

# PLAINTIFFS' REPLY TO DEFENDANTS PHILIP WEISER'S AND STAN HILKEY'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

---

Plaintiffs reply to the Defendants Phillip Weiser's and Stan Hilkey's (collectively, the "State") Response (Dkt. 32) in opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. 19) as follows:

## I. Introduction

Despite claiming that Plaintiffs' motion does not specify the relief sought, State Defendants' Response almost immediately identifies the relief Plaintiffs seek. Plaintiffs ask this Court to enjoin the combined effect of Denver and Colorado law, which imposes a "complete ban on nonresident handgun carry in the City of Denver for Plaintiffs and similarly situated individuals." State Response at 5. The State's claim that Denver provides a legal avenue for private citizens such as Plaintiffs to open carry within its boundaries is spurious. Denver Rev. Mun. Code ("D.R.M.C.") § 38-118(c)(3) is a provision of Denver law that empowers the city to authorize security guards and other similarly situated professionals to carry firearms. The State makes no effort to defend the actual legal regime before the Court that prohibits Plaintiffs from carrying while in Denver. This is a quiet concession that Plaintiffs have a likelihood of success on the merits.

The State's discussion of the remaining prongs of the preliminary injunction analysis is similarly flawed. Such discussion attempts to sidestep applicable case law that Plaintiffs' ongoing desire to carry handguns in Denver is sufficient to constitute

irreparable harm, and ignores longstanding precedent demonstrating that the balance of equites and public interest always favor the Plaintiffs when their constitutional rights are being violated. Finally, the State's arguments against consolidation emphasize that Plaintiffs' motion lacks attached declarations, but ignore the fact that the complaint is a verified complaint signed under oath by the Plaintiffs. Therefore, its allegations may be accepted as evidence, and provide ample factual basis for granting the injunctive relief sought. For the reasons in the motion and below, a preliminary injunction should issue.

## II. The Preliminary Injunction is Sufficiently Specific

"A preliminary injunction is vague only when 'the delineation of the proscribed activity lacks particularity or when containing only an abstract conclusion of law, not an operative command capable of enforcement.'" *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1244 (2001) (quoting *CF&I Steel Corp. v. United Mine Workers of America*, 507 F.2d 170, 173 (10th Cir. 1974).

The preliminary injunction clearly asks this Court to "enter a Preliminary Injunction enjoining Defendants' complete ban on nonresident handgun carry in the City of Denver for Plaintiffs and similarly situated individuals." Motion at 1. The crux of Plaintiffs' argument is that Colorado and Denver law collectively are unconstitutional because they amount to a complete ban on handgun carry in Denver.

Plaintiffs are requesting that this Court enjoin that current regime. The State complains that "Plaintiffs provide no suggestion as to how that relief should be crafted, much less by whom it should be granted." State Response at 9. Plaintiffs have plainly alleged that Denver and Colorado's combined legal regime is unconstitutional. If this preliminary injunction is granted, it is Defendants' duty to craft a legal regime that complies with the scope of this Court's potential injunction.

The State further complains that "the Motion fails to distinguish between the Defendants in any respect." State Response at 8. The Defendants are collectively sued in their official capacities. "We have explained that a suit against a governmental officer 'in his official capacity' is the same as a suit against [the] entity of which [the] officer is an agent." *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Putting the legal fiction aside, the Defendants are the State of Colorado and the City and County of Denver. The "different official positions and different statutory duties" of the respective Defendants are completely irrelevant. State Defendants' Response at 9. That is because an order preliminary enjoining Defendants from enforcing their collective ban against Plaintiffs' right to carry would run against Colorado and Denver. The requested injunction is extremely specific and set forth in the

introduction to Plaintiffs' motion. The State's feigned ignorance as to what is being asked should be rejected as mere puffery.

## III. Plaintiffs Are Suffering Irreparable Harm

The State's main complaint regarding Plaintiffs' irreparable harm argument is that they have not alleged specific dates that they plan on being in Denver. Yet Plaintiffs allege that they "routinely" travel to Denver. First Amended Complaint ("FAC") ¶¶ 66, 100. Furthermore, Mr. Howeth has alleged that he "owns a second home in Weld County, Colorado." FAC ¶ 64. And he regularly travels to Denver International Airport ("DIA") to get there. FAC ¶ 12. Those are more than sufficient allegations to demonstrate that Plaintiffs have plans to go to Denver while this lawsuit is pending.

The State similarly complains that Plaintiffs rely on "vague allegation[s]" regarding their activities in Denver. Plaintiffs have alleged they regularly go to Denver to "eat, shop, run errands, and engage in other activity." FAC ¶¶ 67, 101. There is nothing vague about that. However, to alleviate the State's concerns, Plaintiffs submit a declaration from Mr. Howeth with this reply brief. Mr. Howeth declares he has several trips to Denver planned over the next year. *See* Exhibit 1, Declaration of Greg Howeth (Exhibit 1 – Howeth Declaration) (attached).

The State's reliance on Denver Revised Municipal Code ("D.R.M.C.") § 38-118(c) is misplaced. D.R.M.C. § 38-118(c) is an exception to Denver's carry ban that was intended to allow security guards and other similar professionals to become authorized by the city to carry firearms while performing their jobs. There is no mechanism for a nonprofessional private citizen to receive authorization to open carry a firearm in Denver. Authorization under D.R.M.C. § 38-118(c) simply is not applicable to a private citizen's circumstances.[1] Similarly, D.R.M.C. § 38-118(c)(5), which allows for transporting a firearm while "travelling within a private automobile," does not impact Plaintiffs' claim of irreparable harm. To the extent that provision allows for carry, it does not come close to redressing Plaintiffs' injury. Plaintiffs wish to carry a "handgun for lawful self-defense" while in Denver. Complaint ¶¶ 81, 109. This includes going to "eat, shop, run errands, and engage in other activity." *Id.* ¶¶ 67, 101. Most of these activities cannot be conducted in a car. Thus, Denver's exemption for transporting in a car does not cure Plaintiffs' harm.

The State's remaining argument regarding irreparable harm is predicated on Plaintiffs' alleged delay in filing. Plaintiffs spent a few months preparing a federal lawsuit after their permit denials. It is unreasonable for the State to argue Plaintiffs

---

[1] Even if this Court finds that the authorization provision is applicable to Plaintiffs, it is unconstitutional for the reasons explained in the reply brief to the City Defendants.

should have immediately filed after their permit denials. Lawsuits, especially lawsuits concerning complex issues of constitutional law, require time to prepare. "[D]elay is only one factor to be considered among others and there is no categorical rule that delay bars the issuance of an injunction." *Archer v. Griswold*, 638 F. Supp. 3d 1246, 1261 (2022) (quoting *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016)). *See also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) ("[D]elay is but one factor in the irreparable harm analysis . . . ."). "The operative question "is whether the delay was reasonable, was not a decision by the party to 'sit on its rights,' and did not prejudice the opposing party." *Archer*, 638 F. Supp. 3d at 1261 (quoting *Fish*, 840 F.3d at 753).

Here, the decision was reasonable, and Plaintiffs did not sit on their rights. Plaintiffs applied for concealed carry permits in April and May of this year. They spent the time between their permit denials and the filing of the case preparing the lawsuit. The Tenth Circuit has held that comparable amounts of time were reasonable. In *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social and Rehabilitation Servs*., 31 F.3d 1536 (10th Cir. 1994) the Tenth Circuit found "that a three-month delay in filing did not defeat a claim of irreparable injury when the delay was attributable to plaintiff's attempts to negotiate and the need for further

documentation of the harm. *RoDa Drilling Co*, 552 F.3d at 1211 (quoting *Kan. Health Care Ass'n, Inc.*, 31 F.3d at 1544).

Here, the delay was similarly reasonable. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) requires a historical analysis. The research that demands plus navigating Colorado law required a considerable amount of time. Taking a few months to prepare a complex historical analysis along with the other necessary elements of a federal lawsuit is more than reasonable. To the extent there was a delay, it falls squarely within what the Tenth Circuit has found to be reasonable. This certainly was not an attempt to sit on Plaintiffs' rights. Furthermore, there can be no argument that this alleged delay prejudiced the State. The State only argues the "length of the delay and fails to show how that delay prejudiced [it]. This failure alone is sufficient for us to reject [its] delay rationale." *Fish*, 840 F.3d at 753; *see also Kan. Health Care Ass'n*, 31 F.3d at 1544 ("Finally, we agree with the district court that defendants have not claimed that they are somehow disadvantaged because of the delay.").

The State's laches argument similarly fails because even assuming that there was a lack of diligence on the part of Plaintiffs, the State has offered no evidence that it has suffered prejudice. "There is no necessity to determine the merits of this argument, for the record is clear that the petitioner was not prejudiced by the

Government's delay in any way which satisfies this requisite of laches." *Costello v. United States*, 365 U.S. 265, 282 (1961). As the State makes no argument that it was prejudiced by an alleged delay in filing, its laches argument fails.

## IV. Plaintiffs Have a Strong Likelihood of Success on the Merits

The State makes no attempt to defend the complete ban on handgun carry Plaintiffs face when in Denver. Instead, the State argues that, in a vacuum, Colorado's carry system is constitutional. Plaintiffs do not challenge Colorado's law in a vacuum. Plaintiffs' complaint is with the combined effects of Colorado and Denver law which completely prohibit them from carrying firearms. The State argues that concealed carry is not protected by the Second Amendment. However, the matter before the Supreme Court in B*ruen* was New York's regulations of "concealed" carry permits. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 16 (2022). Based on Supreme Court precedent, it is clear that the Second Amendment protects the carrying of firearms but governments can regulate the manner of carry. The State cites to a historical tradition where concealed carry could be prohibited when open carry was allowed. That is not the regime that is before this Court. Historically, governments could regulate the manner of carry. What they could not do, as *Bruen* held, is prohibit carry altogether. "[T]he right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the . . .

the manner of carry . . . But apart from a handful of late-19th-century jurisdictions, the historical record compiled by respondents does not demonstrate a tradition of broadly prohibiting the public carry of commonly used firearms for self-defense." *Bruen*, 597 U.S. at 38. In Denver, Plaintiffs have no means to carry a handgun for self-defense. That is a result of Colorado and Denver combined. That is what Plaintiffs are challenging. The State makes no effort to defend that regime. That is an implicit concession that Plaintiffs have a strong likelihood of success on the merits.

## V. The Balance Of Equities And The Public Interest Favor Preliminary Relief

As the State observes, the balance of the equities and public interest factors "merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009). Therefore, if something is in the public interest it also fulfills the equites factor of the preliminary injunction test. "[I]t's 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Free the Nipple - Fort Collins v. City of Fort Collins*, 916 F.3d 792, 807 (10th Cir. 2019) (quoting *Free the Nipple - Fort Collins v. City of Fort Collins*, 237 F. Supp. 3d 1126, 1134 (D. Colo. 2017)). "[E]nforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013). The State argues the preliminary injunction should be denied because it faces administrative burdens if a

preliminary injunction is granted. That is wholly irrelevant when deciding whether to grant a preliminary injunction involving a matter of constitutional rights because it is always in the public interest to prevent a violation of a party's constitutional rights. *Free the Nipple*, 916 F.3d at 807.

To shore up any potential confusion, Plaintiffs are not specifically challenging Colorado's reciprocity system. They are challenging the combined effects of Colorado and Denver law that completely prohibit any form of carry in Denver. If that current legal regime is enjoined, there are several ways Defendants could cure the constitutional defects without changing their reciprocity system. The State's argument that "[w]ithout any reciprocity restrictions, all non-residents would be able to apply for concealed-carry permits in Colorado, but the same privilege would not extend to Colorado residents visiting those other states" demonstrates a misunderstanding of what reciprocity entails.

When two states have reciprocity that means a person with a concealed carry permit from State A can concealed carry in state B without the need for applying for State B's concealed carry permit. The fact that two states do not have reciprocity does not mean a resident of State A cannot apply for a concealed carry permit in State B. Nearly all the states that do not give reciprocity to Colorado permits allow

Colorado residents to apply for their state's concealed carry permit.[2] This includes Hawaii and South Carolina.[3] If a state does not allow a Colorado resident to apply for a concealed carry permit, the proper remedy is for that state to be sued for violating the rights of Colorado citizens. It is not a proper remedy for Colorado to violate constitutional rights. The State claims Plaintiffs have offered no "evidence" "to prove that allegation" because "[n]either Plaintiff has offered a declaration." Plaintiffs submitted a verified complaint signed by the Plaintiffs. The first amended complaint has the same evidentiary force as a declaration. Precedent dictates it serves equity and is in the public interest to grant relief.

## VI. <u>The Attorney General is a Proper Party to this Lawsuit</u>

The "proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for the enforcement of that statute." *Makthepharak v. Kelly*, No. 23-2121-DDC-RES, 2024 WL 1256085, at *9 (D. Kansas March 25, 2024) (quoting *Petrella v. Brownback*, 697 F.3d 1285, 1293-94 (10th Cir. 2012). This matter is

---

[2] Plaintiffs believe Oregon and Illinois are the only states that currently do not allow Colorado residents to apply for concealed carry permits.

[3] *See Solinsky v. Lopez*, No. 1:26-cv-00117-JAORT (D. Haw. Apr. 15, 2026), ECF No. 19 (attached as Exhibit 2 – Solinsky Stipulated Judgment), which is a recent stipulated injunction that enjoined Hawaii's ban on nonresidents applying for concealed carry permits.

analogous to *Rocky Mt. Gun Owners v. Polis* 685 F. Supp. 3d 1033 (2023), *rev'd on other grounds* 121 F.4th 96 (10th Cir. 2024). There the Court found "the Governor 'possesses sufficient authority to enforce (and control the enforcement of) the complained-of statute" because '[t]he Colorado Constitution states that the 'supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed.'" *Id.,* at 1047 (quoting *Cooke v. Hickenlooper,* No. 13-cv-01300-MSK-MJW, 2013 WL 6384218, at *8 (D. Colo. Nov. 27, 2013)*, aff'd in part sub nom. Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 554-55 (10th Cir. 2016)). The Attorney General has similar authority and by analogy is a proper party to this suit.

## VII. <u>Conclusion</u>

The preliminary injunction should be granted.

Respectfully submitted this 9th day of November, 2026,

*s/ Alan Beck*

**Alan Alexander Beck**
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Alan.alexander.beck@gmail.com

**Matthew Larosiere**
The Law Office of Matthew Larosiere
6964 Houlton Cir.
Lake Worth, FL 33467
(561) 452-7575
Larosieremm@gmail.com

*Attorneys for Plaintiffs*

## NOTICE PURSUANT TO DDD CIV. P.S. III(A)(2)

Counsel hereby certifies that Plaintiffs' Reply to Defendants Phillip Weiser and Stan Hilkey's response (Dkt. 32) to Plaintiffs' Motion for Preliminary Injunction complies with the length limitation set forth in DDD Civ. P.S. III(A)(2), because it contains 2,684 words.