**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:26-cv-03690-DDD-KAS**

GREG HOWETH;
ZACKARY DOUGHERTY;
NATIONAL RIFLE ASSOCIATION OF AMERICA; and
COLORADO STATE SHOOTING ASSOCIATION,

*Plaintiffs*,

v.

CITY AND COUNTY OF DENVER, COLORADO;
AL GARDNER, in his official capacity as Executive Director of Public Safety for the City and County of Denver;
RON THOMAS, in his official capacity as Chief of Police for the City and County of Denver;
MIKO BROWN, in her official capacity as City Attorney for the City and County of Denver; ELIAS DIGGINS, in his official capacity as Sheriff of Denver;
PHIL WEISER, in his official capacity as Colorado Attorney General; and
STAN HILKEY, in his official capacity as Executive Director of the Colorado Department of Public Safety,

*Defendants*.

---

**PLAINTIFFS' REPLY TO DENVER DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiffs respectfully submit this memorandum in reply to the City and County of Denver, Al Gardner's, Ron Thomas', Miko Brown's, and Elias Diggins's ("Denver") response (Dkt. 33.) to Plaintiffs Motion for Preliminary Injunction (Dkt. 19).

## I. Introduction

Plaintiffs seek a preliminary injunction allowing the individual plaintiffs and similarly situated members of the organizational plaintiffs to carry handguns for self-defense in some manner while in Denver. They are currently barred from doing so. Colorado law prohibits Plaintiffs from carrying concealed. Denver law prohibits open carry. Denver attempts to obfuscate the true nature of its statutory regime by relying on a statutory provision that is designed to authorize security guards and other similar professionals to open carry firearms. Neither this provision nor any other provision of Denver law allows Plaintiffs to open carry while in Denver. As shown below, Plaintiffs fulfill every part of the preliminary injunction factors. A preliminary injunction should issue.

## II. Plaintiffs Have Standing

Defendants' ("Denver") argument that Plaintiffs lack standing because they did not ask for authorization from the Chief to carry in Denver has no merit. There is no mechanism for a civilian to carry a firearm under Denver law unless that person

is engaged in security or another similar profession. Denver Revised Municipal Code ("D.R.M.C") § 38-118(c)[1] is a statutory exemption for security guards and other similar professionals that allows them to carry firearms while in the performance of their jobs. There is no mechanism for a nonprofessional private citizen to receive authorization to open carry a firearm in Denver. Receiving a concealed-carry permit from Colorado or from a state whose permit is recognized by Colorado is the only method to legally carry concealed in Denver. D.R.M.C. § 38-118(c) works in conjunction with D.R.M.C. § 42-137 to provide a legal mechanism for security guards and similar professions to carry while on the job:

> Licensees shall have the right to carry firearms during the performance of security services only when specifically authorized by the chief of police through the manager of safety who will grant such authority only when, in the manager's opinion, the duties to be performed and the services to be rendered by the licensee require that a firearm be carried for the protection of the licensee and only when the licensee demonstrates that the licensee is proficient in the care, maintenance and the use of firearms. A permit to carry a concealed weapon does not constitute the specific authorization required by this section.

D.R.M.C. § 42-137.[2]

---

[1] Plaintiffs concede that they incorrectly cited to a prior version of the D.R.M.C and that Denver properly characterizes their challenge as one to D.R.M.C. § 38-118.

[2] *See also Denver Excise & Licenses, Rules Governing Security Guards & Private Security Employers* (Nov. 1, 2018) available at https://www.denvergov.org/files/assets/public/v/1/business-licensing/documents/rules_governing_security_guards_and_private_security_employers_nov2018.pdf. These rules also consider authorization as something that pertains to security guards.

Authorization under D.R.M.C. § 38-118(c) simply is not applicable to a private citizen's circumstances. The Chief of Police's declaration does nothing to prove otherwise. All he says is had Plaintiffs "sought authorization from the Department to openly carry handguns in Denver, the Department would have considered any such request." *See* Doc. No. [33-1]. Putting aside the fact there is no mechanism for a nonprofessional to apply for authorization, Plaintiffs request would have been denied because they are not seeking to carry in the performance of their job duties. Denver claims the fact that Plaintiffs only applied for a civilian concealed carry permit and did not seek an open carry permit designed for security guards means they lack standing. But a security guard permit only permits them to carry while at work. Plaintiffs wish to carry in their day-to-day lives. Therefore, such authorization to carry would not have redressed the harm they are suffering. Even assuming authorization would give them the ability to carry outside of a job, it would have been futile for them to apply because they are not security guards or otherwise professionally employed in a job that needs a firearm.[3]

---

[3] Notably, the Chief does not state that any private individual has ever previously obtained authorization to open carry from him or his predecessors, nor does Denver supply any evidence to suggest that such authorization has been bestowed on others. Given that Denver proper is a city of around 3/4 of a million residents, it is telling that Defendants offer no examples of such authorization being given to a private individual who is not a security professional at any point during the years since the ordinance has been in place.

All of Denver's case law is distinguishable because it involved situations where it would not be futile to apply. As the Ninth Circuit found in another Second Amendment case, "a plaintiff need not apply for a benefit before filing suit if doing so would be futile." *Matthews v. City of Los Angeles*, 2025 U.S. App. LEXIS 20248, *2 (2025) (citing *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002)).

## III. <u>Plaintiffs are Suffering Irreparable Harm</u>

"Most courts [including the Tenth Circuit] consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (2019). "What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial." *Id.* at 806. As Plaintiffs' case deals with a violation of their Second Amendment rights, that is sufficient to fulfill the irreparable harm prong of the preliminary injunction analysis. The majority of Denver's irreparable harm argument is predicated on its argument that Plaintiffs could have received the right to carry had they attempted to receive authorization to carry from the Chief of Police. As addressed above, that argument has no merit.

Its remaining argument is predicated on Plaintiffs' alleged delay in filing. "[D]elay is only one factor to be considered among others and there is no categorical rule that delay bars the issuance of an injunction." *Archer v. Griswold*, 638 F. Supp.

3d 1246, 1261 (2022) (quoting *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016)). *See also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) ("[D]elay is but one factor in the irreparable harm analysis . . . ."). "The operative question 'is whether the delay was reasonable, was not a decision by the party to "sit on its rights," and did not prejudice the opposing party.'" *Archer*, 638 F. Supp. 3d at 1261 (quoting *Fish*, 840 F.3d at 753).

Here, the decision was reasonable. Plaintiffs applied for concealed carry permits in April and May of this year. The Tenth Circuit has held that comparable amounts of time were reasonable. In *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social and Rehabilitation Servs*., 31 F.3d 1536 (10th Cir. 1994), the Tenth Circuit found "that a three-month delay in filing did not defeat a claim of irreparable injury when the delay was attributable to plaintiff's attempts to negotiate and the need for further documentation of the harm." *RoDa Drilling Co*, 552 F.3d at 1211 (citing *Kan. Health Care Ass'n, Inc.*, 31 F.3d at 1544).

Here, the delay was similarly reasonable. The historical research required by *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), together with the need to navigate Colorado's overlapping state and local firearms laws, took a considerable amount of time. Taking a few months to prepare a complex historical analysis along with the other necessary elements of a federal lawsuit is more than reasonable. To

the extent there was a delay, it falls squarely within what the Tenth Circuit has found to be reasonable. This certainly was not an attempt to sit on Plaintiffs' rights. Furthermore, there can be no argument that this alleged delay prejudiced Denver. Denver only argues about the "length of the delay and fails to show how that delay prejudiced [it]. This failure alone is sufficient for us to reject [its] delay rationale." *Fish*, 840 F.3d at 753; *See also Kan. Health Care Ass'n*, 31 F.3d at 1544 ("Finally, we agree with the district court that defendants have not claimed that they are somehow disadvantaged because of the delay. We therefore find no error or abuse of discretion in the district court's conclusion that plaintiffs established that they have or will suffer an irreparable harm, which is not undermined by their delay in commencing this action."). This Court should reject Denver's argument and find that Plaintiffs are suffering irreparable harm due to the ongoing violation of their constitutional rights.

## IV. Plaintiffs Have a Strong Likelihood of Success on the Merits

Post-*Bruen*, no court has upheld a complete ban on nonresident carry like Denver's. Denver cites a litany of post-*Bruen* cases in support of its ban that are all entirely distinguishable. **Every single case** cited by Denver deals with a legal regime where concealed carry was allowed. Thus, these legal regimes regulated the manner of carry while leaving some manner of carry available to the individual. That is not

the case here. As shown in the complaint and in the motion for preliminary injunction, Denver law in conjunction with Colorado law operates as a complete ban on carry. Denver completely ignores this reality and argues that its laws in a vacuum do not prohibit concealed carry. Whether or not that is the case, it is beside the point. Denver law, in conjunction with Colorado law, prohibits carry altogether for nonresidents such as Plaintiffs.

Denver relies on two provisions of Denver law to argue otherwise. First, D.R.M.C. § 38-118(c)(5), which allows for transporting a firearm while "travelling within a private automobile." To the extent that provision allows for carry, it does not come close to redressing Plaintiffs' injury. Plaintiffs wish to carry a "handgun for lawful self-defense" while in Denver. Complaint ¶¶ 81, 109. This includes going to "eat, shop, run errands, and engage in other activity." Complaint ¶¶ 67, 101. Most of these activities cannot be conducted in a car. Thus, Denver's exemption for transporting in a car does not cure Plaintiffs' harm. Furthermore, once Plaintiffs leave their vehicle, C.R.S. § 18-12-114.5 immediately takes effect. This law requires that their handguns be locked inside a hard-sided container out of plain sight. Thus, D.R.M.C. § 38-118(c)(5) does not allow Plaintiffs to exercise their Second Amendment rights.

Second, D.R.M.C. § 38-118(c), which is a statutory exemption for security guards and other similar professionals. It simply is not applicable to Plaintiffs who wish to carry in their personal lives. "Just as the Second Amendment does not protect a right to bear arms only in connection with a militia, it surely does not protect a right to bear arms only as a security guard." *Young v. Hawaii*, 896 F.3d 1044, 1071 (2018) *vacated on reh'g en banc*, 915 F.3d 681 (9th Cir. 2019), *rev'd en banc*, 992 F.3d 765 (9th Cir. 2021), *vacated and remanded*, 142 S. Ct. 2895 (2022).

Furthermore, even if D.R.M.C. § 38-118(c)'s authorization process could be interpreted in a manner as to allow private citizens to be granted permission to carry it would still be unconstitutional. Denver has no promogulated guidelines and even assuming § 38-118(c) could apply to a private citizen this process would be unconstitutional because it would be at the unbridled discretion of the Chief. *Bruen* requires that licensing regimes "contain only narrow, objective, and definite standards guiding licensing officials, rather than requir[e] the appraisal of facts, the exercise of judgment, and the formation of an opinion." 597 U.S. at 38 n.9 (quotation marks omitted). Even under Denver's argument, at best the Chief would simply "consider" such a request without any guidance from promulgated narrow, objective, and definite standards. *See* Doc. No. [33-1]. Thus, assuming D.R.M.C. § 38-118(c) could be construed to authorize private citizens to carry in their personal lives,

Denver law would still be unconstitutional because under this interpretation it would give the Chief excessive discretion.

## V. The Balance Of Equities And The Public Interest Favor Preliminary Relief

"[I]t's 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 807 (10th Cir. 2019) (quoting *Free the Nipple - Fort Collins v. City of Fort Collins*, 237 F. Supp. 3d 1126, 1134 (D. Colo. 2017)). Denver relies on *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) and claims this case deals with constitutional rights to argue otherwise. However, Aposhian was not a case dealing with constitutional rights. "Mr. Aposhian's merits arguments in this court concern only issues of statutory interpretation." *Id.* at 978. "We cannot conclude that Mr. Aposhian has shown irreparable harm based on the deprivation of a constitutional right when he does not even raise a constitutional challenge to the Final Rule in this court." *Id.* at 990. The Tenth Circuit found Aposhian failed the public interest section of the *Winters* test because "Mr. Aposhian has not argued that the Final Rule violates an individual constitutional right." *Id.* at 991.

## VI. Plaintiffs' Proposed Preliminary Injunction is Sufficiently Specific

Plaintiffs move for a preliminary injunction that provides both the individual plaintiffs and similarly situated members of the two organizational plaintiffs the

ability to publicly carry for self-defense in Denver. Denver appears to accept that if Plaintiffs prevail on the four prongs of the preliminary injunction analysis then relief must be granted as to the individual plaintiffs. Where it struggles is with the members of the organizational plaintiffs. Denver complains that Plaintiffs do not "offer any means of discerning and verifying who their members are in order to determine who a member-wide injunction would cover." Denver Response Brief at 15. Denver cites to no case that makes it a requirement for Plaintiffs to do so in order to be granted a preliminary injunction. The only members of these organizations that would be affected by a preliminary injunction would be nonresidents similarly situated to the individual plaintiffs. After a preliminary injunction is granted, these members would simply need to carry their membership information with them while carrying a handgun in Denver.

## VII. This Court Should Consolidate Pursuant to Rule 65(a)(2)

The issues presented in this case are pure issues of laws. Therefore, consolidation is warranted. It is true that "the parties must be given adequate notice of the consolidation so that they may be given a full opportunity to present their evidence." *Holly Sugar Corp. v. Goshen County Cooperative Beet Growers Asso.*, 725 F.2d 564, 568 (1984). If this Court agrees to consolidate, it could give Denver the "opportunity to call additional witnesses . . . in order to present all of its

evidence." *Id.* However, it is unclear what evidence would be offered that Denver did not already have an opportunity to present in its response brief. Its main concerns appear to be its ability to present history and argue for statutory exemptions from its carry ban. These are arguments it has already made here. As this case deals with a pure issue of law, this case is a prime vehicle for consolidation.

## VIII. Conclusion

A preliminary injunction should issue that allows the individual plaintiffs and similarly situated members of the institutional plaintiffs the ability to carry a handgun for self-defense while in Denver.

Respectfully submitted this 9th day of November, 2026.

*s/ Alan Beck*

**Alan Alexander Beck**
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Alan.alexander.beck@gmail.com

**Matthew Larosiere**
The Law Office of Matthew Larosiere
6964 Houlton Cir.
Lake Worth, FL 33467
(561) 452-7575
Larosieremm@gmail.com

*Attorneys for Plaintiffs*

---

**NOTICE PURSUANT TO DDD CIV. P.S. III(A)(2)**

---

Counsel hereby certifies that Plaintiffs' Reply to City and County of Denver, Al Gardner's, Ron Thomas', Miko Brown's, and Elias Diggins's response (Dkt. 33.) to Plaintiffs Motion for Preliminary Injunction (Dkt. 19) complies with the length limitation set forth in DDD Civ. P.S. III(A)(2), because it contains 2,538 words.